Allied Central Stores, Inc. v. Commissioner.
Allied Cent. Stores, Inc. v. Commissioner
Docket No. 1854-62.
United States Tax Court
T.C. Memo 1964-45; 1964 Tax Ct. Memo LEXIS 293; 23 T.C.M. (CCH) 248; T.C.M. (RIA) 64045; February 26, 1964
Percy W. Phillips, Southwest Bldg., Washington, D.C., for the petitioner. William S. McLean and Colin C. Macdonald, Jr., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent has determined a deficiency of $155,508.38 in the petitioner's income tax for the fiscal year ended January 31, 1957. The only issue presented for decision is the correctness of the respondent's action in not allowing as deductions in the determination of petitioner's *296 taxable net income for the foregoing taxable year certain net operating losses sustained in fiscal years ended January 31, 1951, January 31, 1952, January 31, 1954, and January 31, 1956. Findings of Fact Some of the facts have been stipulated and are found accordingly. The petitioner is a Missouri corporation incorporated on February 27, 1939, under the name of Geo. B. Peck, Inc., and has its principal office in New York City. It filed its Federal income tax return for the fiscal year ended January 31, 1957, with the district director, Upper Manhattan district, now Manhattan district, of the State of New York. At all times the petitioner has kept its accounts and rendered its income tax returns upon the basis of fiscal years ended on January 31 of each year. Such being the situation, reference hereinafter to a given taxable year or years is to a taxable year or years ended on January 31 of such year or years. Throughout the period since its incorporation the petitioner has been a wholly-owned subsidiary of Allied Stores Corporation, sometimes hereinafter referred to as Allied Stores. Allied Stores, incorporated under the laws of Delaware, was organized in 1928 and carried *297 on business under the name of Hahn Department Stores, Inc., until May 29, 1935, when it adopted its present name. It was organized to establish a nationwide chain of department stores which had been previously owned and operated independently of each other. Under its charter Allied Stores has broad powers, including the power to operate all branches of the department store business and to hold the stock of other corporations. It has conducted its business, in part, through the ownership and operation by it of department stores and, in part, through subsidiary corporations owned and controlled by it. Since shortly after its organization, the stock of Allied Stores has been publicly held and has been listed and traded on the New York Stock Exchange. Upon its organization in 1928, Allied Stores acquired all of the capital stock of L. S. Donaldson Company, sometimes hereinafter referred to as Donaldson, a corporation organized in 1899 under the laws of Minnesota, and all of the capital stock of The Golden Rule, sometimes hereinafter referred to as Golden, a corporation also organized under the laws of Minnesota. In 1940, Allied Stores acquired all of the capital stock of Heers, Inc. *298 , sometimes hereinafter referred to as Heers, a corporation organized under the laws of Missouri. On October 31, 1953, Heers was merged into the petitioner. The petitioner was the corporation surviving such merger and its name was changed from that of Geo. B. Peck, Inc., to that of Allied Stores of Missouri, Inc. Thereafter and on September 30, 1956, Donaldson and Golden were merged into the petitioner. The petitioner was the corporation surviving such merger and its name was changed from Allied Stores of Missouri, Inc., to its present name. Prior to the foregoing mergers, the petitioner operated a department store in Kansas City, Missouri; Heers operated a department store in Springfield, Missouri; Donaldson operated four stores, two of which were located in Minneapolis, Minnesota, one in Rochester, Minnesota, and one in Rapid City, South Dakota; and Golden operated a department store in St. Paul, Minnesota. Subsequent to each of the mergers and through its taxable year 1957, the petitioner continued to operate its original store in Kansas City, Missouri, and operated the stores previously operated by the merged corporations. The depreciation schedule - Schedule J - showing properties *299 employed in store operations during petitioner's taxable year 1957 and forming part of petitioner's income tax return for that year is composed of four separate sections bearing the following respective titles and for the periods shown: Title
Period
Allied Central Stores, Inc.,
d.b.a. Geo. B. Peck, Inc.
Year ended 1/31/57
Allied Central Stores, Inc., d.b.a. Heer's Inc.
Year ended 1/31/57
Allied Central Stores, Inc., d.b.a. L. S. Donaldson
Company
10/1/56-1/31/57
Allied Central Stores, Inc., d.b.a. The Golden Rule
10/1/56-1/31/57 The section relating to the unit doing business as Geo. B. Peck, Inc., lists some property as having been acquired as early as 1939. The section relating to the unit doing business as Heer's, Inc., lists some property as having been acquired as early as 1941. The section relating to the unit doing business as L. S. Donaldson Company lists some property as having been acquired as early as 1943, and the section relating to the unit doing business as the Golden Rule lists some property as having been acquired as early as 1933. The above-mentioned depreciation schedule indicates that after the merger of Heers into petitioner and after *300 the merger of Donaldson and Golden into the petitioner, the petitioner maintained separate property and depreciation accounts as to the depreciable properties used in the operation of the businesses formerly conducted by those corporations. The record, however, does not show that petitioner did not similarly maintain separate records respecting the profit or loss of the units of its business formerly conducted by Heers, Donaldson, and Golden. Petitioner sustained net operating losses in the taxable years 1951 and 1952 in the amounts of $1,377.99 and $404,932.25, respectively. For those fiscal years the petitioner filed separate income tax returns. The petitioner had no net taxable income for the taxable year 1950 against which the losses in 1951 and 1952 might have been applied as a loss carryback. For petitioner's taxable year 1953, Allied Stores and its subsidiary corporations, of which the petitioner was one, filed a consolidated return. In such return the losses of prior years were not allowable as a deduction. For its taxable year 1954, the last 3 months of which followed its merger with Heers, the petitioner sustained a net operating loss of $93,589.84 and for that year the *301 petitioner filed a separate income tax return. In its taxable year 1956, the petitioner sustained a net operating loss of $249,681.92 and also filed a separate return for the year. In its income tax return for its taxable year 1955, the petitioner reported taxable income for the year of $248,793.28 before the deduction of any net operating loss of any year. In the return the petitioner deducted net operating losses of its taxable years 1951 and 1952 in an amount equal to its taxable income for its taxable year 1955 as reported in the return for the year, namely, $248,793.28. Upon audit of the return the respondent determined that the petitioner's taxable income of 1955 was $243,371.77 before deduction of any net operating loss carryover or carryback, refused to allow any deduction of net operating losses for the taxable years 1951 and 1952 and allowed against the taxable income for 1955 a net operating loss carryback of $243,371.77 from the taxable year 1956. For its taxable year 1957, the last 4 months of which followed its merger with Donaldson and Golden, the petitioner had taxable income of $315,989.24 before the deduction of any net operating loss carryover or carryback. In *302 its return for that year the petitioner claimed net operating loss carryovers from the taxable years 1952, 1954, and 1956 in the respective amounts of $162,938.47, $93,589.84, and $48,554.66, totaling $305,082.97. In determining the deficiency involved herein the respondent allowed $6,310.15 as a net operating loss carryover from 1956 against income for the taxable year 1957. The respondent explained his action as follows: In your return for the year ended January 31, 1957, you claimed a net operating loss deduction of $305,082.97 computed as follows: Net operating loss carryover from year ended 1/31/52
$162,938.47
Net operating loss carryover from year ended 1/31/54
93,589.84
Net operating loss carryover from year ended 1/31/55
48,554.66
Net operating loss deduction claimed in year ended 1/31/57
$305,082.97
It is held that you are not entitled to carry forward the aforementioned amounts pursuant to section 172 of the Internal Revenue Code of 1954 and to section 122 of the Internal Revenue Code of 1939. You are, however, entitled to a net operating loss deduction of $6,310.15 computed as follows: Net operating loss for taxable year ended 1/31/56
$249,681.92
Applied as carryback to the taxable year ended 1/31/55
243,371.77
Net operating loss carryover to taxable year ended 1/31/57
$ 6,310.15
*303 Accordingly, the net operating loss deduction claimed is disallowed to the extent of $298,772.82. The petitioner was organized with a capital stock of $50,000 divided into 50,000 shares of a par value of $1 each and its articles of incorporation provided that petitioner's board of directors should be composed of 7 members. Pursuant to an amendment to the articles of incorporation on November 27, 1942, the capital stock of the petitioner was increased from 50,000 shares of the par value of $1 each to 50,000 shares of common of the par value of $1 each and 3,000 shares of 6 percent cumulative preferred stock of the par value of $100 each. Immediately prior to the merger of Heers into the petitioner on October 31, 1953, the stated capital of the constituent corporation was as follows: Total
No. of
Par
par
Corporation
shares
Type
value
value
Petitioner
50,000
Common
$ 1
$ 50,000
3,000
Preferred
100
300,000
Heers
1,000
Common
100
100,000
Under the articles of merger the stated capital attributable to Heers became upon the merger paid-in surplus of petitioner as the surviving corporation. Pursuant to the articles of merger *304 the membership of the board of directors of petitioner was decreased from 7 members to 5 members. Immediately prior to the merger of Golden and Donaldson into the petitioner on September 30, 1956, the stated capital of the constituent corporation was as follows: No. of
Par
Total par
Paid-in
Corporation
shares
Type
value
value
surplus
Petitioner
50,000
Common
$ 1
$ 50,000
$ 185,534.62
3,000
Preferred
100
300,000
Golden
14,000
Common
100
1,400,000
Donaldson
10,000
Common
100
1,000,000
2,203,925.05
Under the articles of merger and upon the merger of Golden and Donaldson into the petitioner, the stated capital of Golden, $1,400,000, the stated capital of Donaldson, $1,000,000 and Donaldson's paid-in surplus of $2,203,925.05, or a total of $4,603,925.05, became paid-in surplus of petitioner as the surviving corporation. As a result the petitioner's stated capital subsequent to the merger was as follows: common stock of the par value of $50,000, preferred stock of the par value of $300,000, and paid-in surplus in the amount of $4,789,459.67. Pursuant to the articles of merger the membership of the board of directors of the *305 petitioner was increased from 5 members to 9 members. Assets and liabilities of the petitioner as of February 1, 1956, and January 31, 1957, were as follows: ASSETS
February 1, 1956
January 31, 1957
Cash
$ 242,582.59
$ 1,613,360.68
Notes and accounts
$4,235,259.25
$7,333,166.88
receivable
Less: Reserve for
254,277.04
3,980,982.21
433,810.60
6,899,356.28
bad debts
Inventories:
$ 85,581.81
$ 304,646.12
Supplies
Finished goods
1,605,080.37
7,194,749.75
Merchandise in
113,463.61
1,804,125.79
507,417.18
8,006,813.05
transit
Other investments -
$ 10,000.00
Subs.
Stock - Domestic
$ 32,300.00
32,300.00
35,992.76
45,992.76
Corp.
Capital assets: Depreciable assets: Fur. and Fixt
$1,123,077.28
$4,240,384.21
Del. Equip
8,553.48
65,252.70
Improvements to
949,757.51
2,938,000.44
leased property
Total depreciable
$2,081,388.27
$7,243,637.35
assets
Less: reserve for
741,966.83
1,339,421.44
2,683,167.28
4,560,470.07
depreciation
Other assets: Deferred charges
$ 39,476.45
$ 271,529.31
Sundry receivables
161,309.75
200,786.20
896,128.06
Improvements in
2,468,993.01
3,636,650.38
process
Total assets
$7,600,198.25
$24,762,643.22
LIABILITIES
Accounts payable
$ 675,163.17
$ 2,987,688.55
Accrued expenses: Taxes
$ 43,391.11
$ 629,226.12
Salaries
89,215.73
132,606.84
475,914.45
1,105,140.57
Other liabilities: Allied Stores
$4,744,937.49
$6,112,454.72
Fed. inc. tax
210.27
4,745,147.76
140,754.54
6,253,209.26
reserve
Surplus reserves: Unearned income
$ 5,017.44
$ 153,936.14
Reserve for
263,999.09
156,373.98
discounts
Reserve for
45,402.60
314,419.13
236,997.96
547,308.08
contingencies
Capital stock: Preferred
$ 300,000.00
$ 300,000.00
Common
50,000.00
350,000.00
50,000.00
350,000.00
Paid-in cap. surplus
185,534.62
4,811,127.28
Earned surplus
1,197,326.71
8,708,169.48
Total liabilities
$7,600,198.23
$24,762,643.22
*306 Opinion In its income tax return for the taxable year 1957, the last 4 months of which followed its merger with Donaldson and Golden, the petitioner reported taxable income of $305,082.97 before any net operating loss deduction. From the foregoing amount of taxable income the petitioner deducted $305,082.97 as a net operating loss deduction. As a result of the deduction taken, the petitioner reported no tax liability for the year. The net operating loss deduction of $305,082.97 as computed by petitioner in its return was composed of net operating loss carryovers from the following years in the indicated amounts: Year
Amount
1952
$162,938.47
1954
93,589.84
1956
48,554.66
Total
$305,082.97
In determining the deficiency the respondent, by adjustments not controverted herein by petitioner, determined that petitioner's taxable income for 1957 was $315,989.24 before any net operating loss deduction, determined that the allowable net operating loss carryover from 1956 to 1957 was $6,310.15, and disallowed the remainder, or $298,772.82, of the $305,082.97 taken by petitioner as a net operating loss deduction for 1957. Taking the position that the record herein *307 and the law applicable thereto so require, the petitioner requests that we find that there are allowable to it as deductions for 1957 net operating loss carryovers from the following years in the indicated amounts: Amount of net
operating loss
Year
carryover
1952
$162,938.47
1954
93,589.84
1956
59,460.83
Total
$315,989.24 The above amount of $162,938.47 shown for 1952 is computed by petitioner as follows: Net operating loss for 1952
$404,932.25
Taxable income for 1955
$243,371.77
Less: Net operating loss for 1951
1,377.99
Balance of taxable income for 1955
$241,993.78
Portion of net operating loss for 1952 applicable
241,993.78
to taxable income for 1955
Unused net operating loss for 1952 applicable to
taxable income for
1957
$162,938.47
The respondent takes the position that the petitioner's requested finding is without support in fact and in law and may not correctly be made. The petitioner takes the position that under the provisions of section 172(g)(1) of the Code of 1954 the determination of the years to which the net operating losses for 1951 and 1952 are to be carried over is to be made under the provisions *308 of the Code of 1939 and that under the provisions of section 172(b)(1) the determination as to the years to which the net operating loss for 1954 is to be carried over is to be made under the provisions of the Code of 1954. The petitioner also states on brief that the provisions of sections 381 and 382 of the Code of 1954 provide that in the case of a statutory merger, the acquiring corporation succeeds to the net operating loss carryover of the transferor corporation, and that while there are some restrictions, that they do not apply here since there was no change in the stock ownership or control. The respondent takes the position that the tax treatment of the net operating losses for 1951 and 1952 here involved are to be determined under the provisions of the Code of 1939. The respondent further takes the position that the tax treatment of the net operating loss for 1954 also is to be determined under the provisions of the Code of 1939 and in support thereof makes the following contentions: That the first merger, that between petitioner and Heers, occurred on October 31, 1953, which was during the petitioner's taxable year endedjanuary 31, 1954; that the provisions of the Code *309 of 1954 applicable to reorganizations are contained in part III of subchapter C of chapter 1 of the Code; that pursuant to section 393 of the Code, part III became effective on June 24, 1954; that section 394(a) and (c) provides that sections 381 and 382(b) apply only to mergers the tax treatment of which is determined under the Code of 1954; that since the merger on October 31, 1953, occurred prior to June 22, 1954, its tax treatment is not determined under the Code of 1954 and the provisions of sections 381 and 382 are not applicable; that section 7851(a) of the Code of 1954 provides that except as otherwise provided, chapter 1 of that Code applies only with respect to taxable years beginning after December 31, 1953; that since sections 381 and 382(b) do not alter the general rule, the only other provisions of the Code possibly relating to this issue are those contained in section 172(f) which provides that in determining the amount of the net operating loss for a taxable year beginning in 1953 and ending in 1954, two separate computations are to be made, one under the provisions of the Code of 1939 for that portion of the taxable year falling within 1953 and another for that portion *310 falling within 1954; and that there is lacking elsewhere in the Code any indication that the foregoing provisions of section 172(f) were intended as an exception to the general rule of section 7851(a). Pertinent portions of the Code of 1939 and of the Code of 1954 are set out below. [1]
*311 Section 172(a) of the Code of 1954 provides for the allowance as a deduction for the taxable year an amount equal to the aggregate of the net operating loss carryovers to such year, plus the net operating loss carrybacks to such year, and that for the purposes of Subtitle A - Income Taxes - the term "net operating loss deduction" means the deduction allowed by section 172(a). Subsection (b) of section 172 deals with net operating loss carrybacks and carryovers and prescribes the number of taxable years to which they can be made and the amount thereof. Subsection (c) provides that for the purpose of section 172 the term "net operating loss" means (for any taxable year ending after December 31, 1953) the excess of the deductions allowed by Chapter 1 of the Code of 1954 - Normal Taxes and Surtaxes - over the gross income computed with the modifications specified in subsection (d). Subsection (e) prescribes the law applicable to computations of net operating loss carrybacks and carryovers. Subsection *312 (f) prescribes the method of computing the amount of net operating loss in the case of taxable years beginning in 1953 and ending in 1954. Subsection (g) provides special transitional rules respecting losses for taxable years ending before January 1, 1954, and those for taxable years ending after December 31, 1953. Section 393(a) provides that the effective date of part III of subchapter C of chapter 1 relating to corporate reorganizations is June 22, 1954, and section 394 provides that sections 381 and 382(b) shall apply to "reorganizations, the tax treatment of which is determined under this [1954] Code." Section 7851(a) provides that except as otherwise provided in this title, Chapter 1 - Normal Taxes and Surtaxes - which includes sections 1 through 1377, shall apply only with respect to taxable years beginning after December 31, 1953, and ending after the date of enactment, August 16, 1954, of the Code of 1954. Herbert J. Kent, 35 T.C. 30 (1960), involved the deductibility of a net operating loss carryback by the taxpayer from his taxable year 1955 to the year 1953. The taxpayer contended that the computation of the amount of the carryback and its allowability *313 for 1953 were governed by section 172 of the Code of 1954. In holding adversely to the petitioner, the Court said: We agree with petitioners that computation of the amount of the net operating loss for 1955 which may be carried back to 1953 must be governed by section 172 of the 1954 Code, Reo Motors v. Commissioner, 338 U.S. 442 (1950); Cambria Collieries Co., 10 T.C. 1172 (1948); but in our opinion both the allowance of the net operating loss deduction for the year 1953 and computation of the amount thereof are governed by the law applicable to the year 1953, being sections 23(s) and 122 of the 1939 Code, unless there is something in the provisions of the 1954 Code which would specifically dictate otherwise. We have found nothing in the 1954 Code provisions which states or even implies that the net operating loss deduction or computation of the amount thereof for years beginning prior to December 31, 1953, should be governed by the 1954 Code. [Italics added] True, section 172(a) of the 1954 Code allows as a deduction for any taxable year to which it is applicable an amount equal to the aggregate of the net operating loss carryovers and carrybacks *314 to that year, unreduced by any adjustments such as are required under section 122 of the 1939 Code. But section 7851(a) of the 1954 Code specifically provides that chapter 1 of subtitle A of the 1954 Code, which includes section 172, shall apply only with respect to taxable years beginning after December 31, 1953; and the fact that the amount of the net operating loss for the year 1955 which may be carried back to 1953 must be computed under the 1954 Code does not make the net operating loss deduction provisions of the 1954 Code applicable to years prior to 1954. In Irving-Kolmar Corporation, 35 T.C. 712 (1961), all of the capital stock of the taxpayer, a corporation engaged in the real estate business, and all of the capital stock of Home Manufacturing Company (hereinafter called Home), a corporation engaged in the manufacture of wood products, was owned and controlled in 1953 by the same persons, who were stockholders of the taxpayer. The taxpayer and Home were merged as of December 31, 1953, with no change in stockholders and with the taxpayer being the surviving corporation. Following the merger the taxpayer for a few months continued the curtailed operations formerly *315 carried on by Home and subsequently discontinued the business formerly conducted by Home. In 1953 and prior to the merger Home sustained a net operating loss. In its income tax return for 1953 the taxpayer deducted a portion of the foregoing net operating loss sustained by Home and in its returns for 1954, 1955, and 1956 deducted other portions of the loss. For each of the 4 years the respondent disallowed the deduction taken by the taxpayer. The taxpayer contended that the Code of 1954 was controlling and that under sections 381 and 382 thereof it was entitled to carry over the 1953 net operating loss of Home. In holding that the provisions of the 1939 Code were applicable and that under that Code no deduction was allowable for 1953 or for later years, the Court said: There is a general provision in the 1954 Code that it shall apply only to taxable years beginning after December 31, 1953. Sec. 7851(a). Its provisions do not apply to a net operating loss deduction for 1953, the first year here involved. Cf. Herbert J. Kent, 35 T.C. 30. Furthermore, the petitioner falls far short of demonstrating that there is any applicable provision of the 1954 Code under which it *316 is entitled to carry over in any way the 1953 net operating loss of Home. The effective date of part III of that Code, containing the reorganization provisions, is June 22, 1954. Section 394 provides that sections 381 and 382(b) shall apply to "reorganizations, the tax treatment of which is determined under this Code." The "tax treatment" of the reorganization (merger) which took place on December 31, 1953, is not "determined under this [1954] Code." * * * From a consideration of the provisions of the Code of 1954, the arguments of the parties with respect thereto, and the abovequoted statements contained in the Kent and Irving-Kolmar cases, we are of the opinion and accordingly hold that the provisions of the Code of 1939 are applicable in a determination of the question of whether the petitioner is entitled to carry over and deduct the net operating losses for 1951, 1952, and 1954 here involved. The respondent contends that under the decision in Libson Shops, Inc. v. Koehler, 353 U.S. 382 (1957), rehearing denied 354 U.S. 943 (1957), the petitioner is not entitled to a carryover to 1955 of any part of the net operating losses for 1951 and 1952, and *317 is not entitled to a carryover to 1957 of any part of the net operating losses for 1952 and 1954 for the reason that after the merger into petitioner of Heers on October 31, 1953, the petitioner was not the same taxpayer which incurred the losses within the intendment of section 122 of the Code of 1939. Further, the respondent contends as to the net operating loss for 1954 the record fails to disclose what losses for that year, if any, were incurred subsequent to the merger and that since the burden of proof was on the petitioner to establish its right to a net operating loss deduction and since the petitioner has failed to show otherwise, the loss for 1954 must be treated as a premerger loss. The taxpayer in the Libson case was a Missouri corporation, incorporated in January 1946 under the name of Libson Shops Management Corporation to provide management services for corporations selling women's apparel at retail. Its articles of incorporation also permitted it to sell apparel. At about the same time, the same interests who had incorporated the Management Corporation incorporated 16 separate corporations to sell women's apparel at retail at separate locations. Twelve of the corporations *318 were incorporated and went into business in Missouri and 4 in Illinois. Each of the 16 sales corporations was operated separately and filed separate income tax returns. The taxpayer's sole activity was to provide management services for them. The outstanding stock of all 17 corporations was owned, directly or indirectly, by the same individuals in the same proportions. On August 1, 1949, the 16 sales corporations were merged into the taxpayer. New shares of the taxpayer's stock were issued, pro rata, in exchange for the stock of the sales corporations. By virtue of the merger agreement the taxpayer's name was changed, the amount and par value of its stock was revised and its corporate purposes expanded. Following the merger the taxpayer conducted the entire business as a single enterprise. Thus, the effect of the merger was to convert 16 retail businesses and one managing agency, reporting their incomes separately, into a single enterprise filing one income tax return. Prior to the merger, three of the sales corporations showed net operating losses totaling approximately $22,433 for taxable years or periods ending in 1948 and in 1949 prior to the merger. In the year following the *319 merger each of the retail units formerly operated by the three sales corporations continued to sustain a net operating loss. In its income tax return for the first year after the merger the taxpayer claimed a deduction of the above-mentioned $22,433 as a carryover of its premerger losses, seeking the deduction under sections 23(s) and 122 of the Code of 1939, as amended. The Commissioner disallowed the deduction. After examining the provisions of sections 23(s) and 122 of the Code of 1939, as amended, the Court observed that in support of the denial of the carryover, the Government argued that the statutory privilege is not available unless the corporation claiming it is the same taxable entity as that which sustained the loss; that in reliance on New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934), and cases following it, the Government argued that separately chartered corporations are not the same taxable entity; and that the taxpayer, on the other hand relying on Helvering v Metropolitan Edison Co., 306 U.S. 522 (1939), and cases following it, argued that a corporation resulting from a statutory merger is treated as the same taxable entity as its *320 constituents to whose legal attributes it has succeeded by operation of state law. The Court stated that it was unnecessary to discuss the issue since an alternative argument made by the Government was dispositive of the case. The Court further stated that the Government contended that the carryover privilege is not available unless there is a continuity of business enterprise, and argued that the prior year's loss can be offset against the current year's income only to the extent that this income is derived from the operation of substantially the same business which produced the loss and that only to that extent is the same taxpayer involved. In concluding adversely to the taxpayer the Supreme Court said: The requirement of a continuity of business enterprise as applied to this case is in accord with the legislative history of the carry-over and carry-back provisions. Those provisions were enacted to ameliorate the unduly drastic consequences of taxing income strictly on an annual basis. They were designed to permit a taxpayer to set off its lean years against its lush years, and to strike something like an average taxable income computed over a period longer than one year. There *321 is, however, no indication in their legislative history that these provisions were designed to permit the averaging of the pre-merger losses of one business with the post-merger income of some other business which had been operated and taxed separately before the merger. What history there is suggests that Congress primarily was concerned with the fluctuating income of a single business. * * *
The availability of this privilege depends on the proper interpretation to be given to the carry-over provisions. We find nothing in those provisions which suggest that they should be construed to give a "windfall" to a taxpayer who happens to have merged with other corporations. The purpose of these provisions is not to give a merged taxpayer a tax advantage over others who have not merged. We conclude that petitioner is not entitled to a carry-over since the income against which the offset is claimed was not produced by substantially the same businesses which incurred the losses. At this point it is observed that in the Libson case the facts showed the names of the three mergering corporations which had sustained net operating losses prior to the merger, the taxable periods in which *322 the losses had been sustained and the amounts of the losses. The facts additionally showed that, "In the year following the merger, each of the retail units formerly operated by these three corporations continued to sustain a net operating loss." The additional showing clearly established that the deduction for the premerger losses of the three corporations taken by Libson, the corporation surviving the merger, in the year following the merger did not offset the income of the "units" formerly operated by those three corporations but offset the income of units operated by other corporations prior to the merger. The Supreme Court clearly held that such an offset was not available to Libson under section 122. In so doing we think the Court has made it clear that where a net operating loss is sustained by a corporation prior to its merger with another corporation and the business of the loss corporation becomes a unit of the business conducted by the surviving corporation, such premerger losses may not be used to offset the income of other units of the surviving corporation which prior to the *323 merger were operated by the other corporation because the income against which the offset is made was not produced by substantially the same business which incurred the losses. And such rule has been applied even though the corporation which sustained the losses is the corporation surviving the merger. Julius Garfinckel & Co., 40 T.C. 870 (1963), on appeal (C.A. 2, Nov. 15, 1963). After having considered the factual situation herein in connection with the various arguments of the parties, it is our opinion that the holding of the Supreme Court in the Libson case is applicable in determining the deductibility of the net operating losses for 1951, 1952, and 1954 in issue. Prior to the merger of Heers into the petitioner on October 31, 1953, the petitioner operated a department store in Kansas City, Missouri, and Heers operated a department store in Springfield, Missouri. Following the merger and throughout its taxable year 1957, the petitioner as the corporation surviving the merger continued to operate its original store in Kansas City and the store in Springfield previously operated by Heers. The net operating losses of the petitioner for the taxable years 1951 and *324 1952 here involved represented losses sustained by petitioner in operating its store in Kansas City prior to the merger of Heers into the petitioner. Under the rule of the Libson case those losses could be carried over to a later year or years and allowed as offsets only against the income of substantially the same business which incurred them, namely, the business of the Kansas City store or unit of the petitioner. The net operating loss of $93,589.84 for the taxable year 1954, ended January 31, 1954, likewise under the rule of the Libson case could be carried over to later years and allowed as offsets only against the income of substantially the same business in which incurred. For the last 3 months of its taxable year 1954 the petitioner in addition to continuing the operation of its original store in Kansas City, also operated the store formerly operated by Heers in Springfield. The record is silent as to whether the entire amount of the loss resulted from the operation of the Kansas City store or in part from the operation of the Kansas City store and in part from the operation of the Springfield store following the merger. The respondent makes no contention that the loss or any *325 part thereof resulted from the operation of the Springfield store prior to the merger and for present purposes we conclude no part so resulted. For its taxable year 1955, ended January 31, 1955, the taxable net income of the petitioner was $243,371.77. Throughout that year the petitioner operated its original store in Kansas City and the store in Springfield formerly operated by Heers. The record is silent as to the portion of the income resulting from the former store or from the latter. It is against the income of this year that the petitioner seeks to apply as offsets the full amount of the net operating loss for 1951 and the greater portion of the net operating loss for 1952. In the absence of a showing that any amount of the income for 1955 resulted from the operation of the Kansas City store and in view of the rule of the Libson case we are unable to find that any portion of the loss for either of the years may be offset against taxable income for 1955. On September 30, 1956, Donaldson which operated two stores in Minneapolis, Minnesota, one store in Rochester Minnesota, and one in Rapid City, South Dakota, and Golden which operated one store in St. Paul, Minnesota, were *326 merged into petitioner. For the last 4 months of its taxable year 1957, ended January 31, 1957, the petitioner continued to operate its original store in Kansas City, Missouri, and the store formerly operated by Heers in Springfield, Missouri and in addition operated the stores formerly operated by Donaldson in Minneapolis and Rochester, Minnesota, and the store in Rapid City, South Dakota, and the store formerly operated by Golden in St. Paul, Minnesota. For the taxable year 1957 the income of the petitioner was $315,989.20. The record is silent as to the portion, if any, of that income that resulted from the operation of either the petitioner's original store in Kansas City, or from the store in Springfield formerly operated by Heers. In this state of the record and in view of the rule of the Libson case we are unable to find that any portion of the loss for 1952 and the entire loss for 1954 may be offset against taxable income for 1957. In view of what has been said above we sustain the respondent's determination that the petitioner was not entitled to any net operating loss carryovers from 1951 and 1952 to 1955 or 1957 and was not entitled to any net operating loss carryover *327 from 1954 to 1957. Since as heretofore pointed out, section 7851(a) of the Code of 1954 has made the provisions of the Code, with certain exceptions not material here, applicable to taxable years beginning after December 31, 1953, and ending after August 16, 1954, and since the petitioner's taxable year 1955 began on February 1, 1954, and ended on January 31, 1955, it is apparent that the provisions of the Code of 1954 are applicable to petitioner's taxable years 1955, 1956, and 1957. Such being the case we perceive no error in the respondent's action in applying the petitioner's net operating loss of $249,681.92 for 1956 against the petitioner's taxable income of $243,371.77 for 1955 and carrying over to and allowing as a deduction for 1957 the excess of such net operating loss, $6,310.15. Decision will be entered for the respondent. Footnotes
1. Section 23(s) of the Code of 1939 provides for the deduction of the net operating loss deduction computed under section 122. Sec. 122(b)(2)(B) of the 1939 Code provides in part: "(B) Loss for Taxable Year Beginning After 1949. - If for any taxable year beginning after December 31, 1949, the taxpayer has a net operating loss such net operating loss shall be a net operating loss carryover for each of the five succeeding taxable years * * *" The Code of 1954 provides in part as follows: SEC. 172. NET OPERATING LOSS DEDUCTION. (a) Deduction Allowed. - There shall be allowed as a deduction for the taxable year an amount equal to the aggregate of (1) the net operating loss carryovers to such year, plus (2) the net operating loss carrybacks to such year. For purposes of this subtitle, the term "net operating loss deduction" means the deduction allowed by this subsection. (b) Net Operating Loss Carrybacks and Carryovers. - (1) Years to Which Loss May be Carried. - A net operating loss for any taxable year ending after December 31, 1957, shall be - (A) a net operating loss carryback to each of the 3 taxable years preceding the taxable year of such loss, and (B) a net operating loss carryover to each of the 5 taxable years following the taxable year of such loss. (2) Amount of Carrybacks and Carryovers. - Except as provided in subsection (1), the entire amount of the net operating loss for any taxable year (hereinafter in this section referred to as the "loss year") shall be carried to the earliest of the 8 taxable years to which (by reason of subparagraphs (A) and (B) of paragraph (1)) such loss may be carried. The portion of such loss which shall be carried to each of the other 7 taxable years shall be the excess, if any, of the amount of such loss over the sum of the taxable income for each of the prior taxable years to which such loss may be carried. For purposes of the preceding sentence, the taxable income for any such prior taxable year shall be computed - (A) with the modifications specified in subsection (d) other than paragraphs (1), (4), and (6) thereof; and (B) by determining the amount of the net operating loss deduction without regard to the net operating loss for the loss year or for any taxable year thereafter, and the taxable income so computed shall not be considered to be less than zero. (c) Net Operating Loss Defined. - For purposes of this section, the term "net operating loss" means (for any taxable year ending after December 31, 1953) the excess of the deductions allowed by this chapter over the gross income. Such excess shall be computed with the modifications specified in subsection (d). * * *
(e) Law Applicable to Computations. - In determining the amount of any net operating loss carryback or carryover to any taxable year, the necessary computations involving any other taxable year shall be made under the law applicable to such other taxable year. The preceding sentence shall apply with respect to all taxable years whether they begin before, on, or after January 1, 1954. (f) Taxable Years Beginning in 1953 and ending in 1954. - In the case of a taxable year beginning in 1953 and ending in 1954 - (1) In lieu of the amount specified in subsection (c), the net operating loss for such year shall be the sum of - (A) that portion of the net operating loss for such year computed without regard to this subsection which the number of days in the loss year after December 31, 1953, bears to the total number of days in such year, and (B) that portion of the net operating loss for such year computed under section 122 of the Internal Revenue Code of 1939 as if this section had not been enacted which the number of days in the loss year before January 1, 1954, bears to the total number of days in such year. * * *
(g) Special Transitional Rules. - (1) Losses for Taxable Years Ending Before January 1, 1954. - For purposes of this section, the determination of the taxable years ending after December 31, 1953, to which a net operating loss for any taxable year ending before January 1, 1954, may be carried shall be made under the Internal Revenue Code of 1939. (2) Losses for Taxable Years Ending After December 31, 1953. - For purposes of section 122 of the Internal Revenue Code of 1939 - (A) the determination of the taxable years ending before January 1, 1954, to which a net operating loss for any taxable year ending after December 31, 1953, may be carried shall be made under subsection (b)(1)(A) of this section; and (B) in determining the amount of the carryback to the first taxable year preceding the first taxable year ending after December 31, 1953, the portion of the net operating loss carried to such year shall be such net operating loss reduced by - (i) the net income for the second preceding taxable year computed as if the second sentence of section 122(b)(2)(B) of the Internal Revenue Code of 1939 applied, or (ii) if smaller, the portion of the net operating loss which by reason of subsection (f) of this section is carried to the second preceding taxable year. * * *
SEC. 393. EFFECTIVE DATES OF PARTS III AND IV. (a) General Rule. - Except as otherwise provided in this subchapter, parts III and IV shall take effect on June 22, 1954. * * *
SEC. 394. EFFECTIVE DATE OF PART V. (a) Section 381. - Except as otherwise provided in this subchapter, section 381 shall apply to liquidations and reorganizations, the tax treatment of which is determined under this Code. (b) Section 382(a). - For purposes of applying the special limitation on net operating loss carryovers in section 382(a), the beginning of the taxable years specified in clauses (i) and (ii) of section 382(a)(1)(A) shall be considered to be the beginning of such taxable years or June 22, 1954, whichever occurs later. (c) Section 382(b). - Section 382(b) shall apply to reorganizations, the tax treatment of which is determined under this Code. SEC. 7851. APPLICABILITY OF REVENUE LAWS. (a) General Rules. - Except as otherwise provided in any section of this title - (1) Subtitle A. - (A) Chapters 1 [Normal Taxes and Surtaxes, sections 1 to 1377] * * * of this title shall apply only with respect to taxable years beginning after December 31, 1953, and ending after the date of enactment [August 16, 1954] of this title, and with respect to such taxable years, chapters 1 (except sections 143 and 144) and 2, and section 3801, of the Internal Revenue Code of 1939 are hereby repealed. * * *↩