## LIBSON SHOPS, INC., *v.* KOEHLER, DISTRICT DIRECTOR OF INTERNAL REVENUE.

No. 64. Argued January 15, 1957.—Decided May 27, 1957.

*Henry C. Lowenhaupt* and *Owen T. Armstrong* argued the cause for petitioner. With them on the brief was *Abraham Lowenhaupt.*

*John N. Stull* argued the cause for respondent. On the brief were *Solicitor General Rankin, Assistant Attorney General Rice, Harry Baum* and *Grant W. Wiprud.*

*Louis Eisenstein* filed a brief for the Newmarket Manufacturing Co., as *amicus curiae,* urging reversal.

MR. JUSTICE BURTON delivered the opinion of the Court.

The issue before us is whether, under §§ 23 (s) and 122 of the Internal Revenue Code of 1939, as amended, a corporation resulting from a merger of 17 separate incorporated businesses, which had filed separate income tax returns, may carry over and deduct the pre-merger net operating losses of three of its constituent corporations from the post-merger income attributable to the other businesses. We hold that such a carry-over and deduction is not permissible.

Petitioner, Libson Shops, Inc., was incorporated on January 2, 1946, under the laws of Missouri, as Libson Shops Management Corporation, to provide management

services for corporations selling women's apparel at retail. Its articles of incorporation also permitted it to sell apparel. At about the same time, the same interests incorporated 16 separate corporations to sell women's apparel at retail at separate locations. Twelve were incorporated and went into business in Missouri; four in Illinois. Each of these 16 sales corporations was operated separately and filed separate income tax returns. Petitioner's sole activity was to provide management services for them. The outstanding stock of all 17 corporations was owned, directly or indirectly, by the same individuals in the same proportions.

On August 1, 1949, the 16 sales corporations were merged into petitioner under the laws of Missouri and Illinois. New shares of petitioner's stock were issued, pro rata, in exchange for the stock of the sales corporations. By virtue of the merger agreement, petitioner's name was changed, the amount and par value of its stock revised, and its corporate purposes expanded. Following the merger, petitioner conducted the entire business as a single enterprise. Thus, the effect of the merger was to convert 16 retail businesses and one managing agency, reporting their incomes separately, into a single enterprise filing one income tax return.

Prior to the merger, three of the sales corporations showed net operating losses. These were as follows:

| Corporation | Taxable Period | Amount |
|---|---|---|
| Evanston Libson Shops, Inc.. | Calendar year 1948...... | $8,115.11 |
| | Fiscal period begun Jan. 1, 1949, and ended July 31, 1949 ................ | 6,422.28 |
| Lawrence Libson Shops, Inc.. | Fiscal period ended July 31, 1948.............. | 245.03 |
| | Fiscal year ended July 31, 1949 ................ | 2,770.42 |
| Hampton Libson Shops, Inc.. | Fiscal year ended July 31, 1949 ................ | 4,879.92 |
| Total ........................................ | | $22,432.76 |

In the year following the merger, each of the retail units formerly operated by these three corporations continued to sustain a net operating loss.

In its income tax return for the first year after the merger, petitioner claimed a deduction of the above $22,432.76 as a carry-over of its pre-merger losses. Petitioner sought this deduction under §§ 23 (s) and 122 of the Internal Revenue Code of 1939, as amended. The Commissioner of Internal Revenue disallowed it and petitioner paid the resulting tax deficiency. In due course petitioner brought this suit for a refund in the United States District Court for the Eastern District of Missouri. That court dismissed petitioner's complaint and the Court of Appeals affirmed. 229 F. 2d 220. We granted certiorari to decide the questions of tax law involved. 351 U. S. 961.

Section 23 (s) authorizes a "net operating loss deduction computed under section 122." [1] Section 122 prescribes three basic rules for this calculation. Its pertinent parts provide generally (1) that a "net operating loss" is the excess of the taxpayer's deductions over its gross income (§ 122 (a)); (2) that, if the taxpayer has a net operating loss, the loss may be used as a "net operating loss carry-back" to the two prior years (§ 122 (b)(1)(A)) and, if not exhausted by that carry-back, the remainder may be used as a "net operating loss carry-over" to the three succeeding years (§ 122 (b)(2)(C)); and (3) that

---

[1] As originally added to the 1939 Code by the Revenue Act of 1939, c. 247, 53 Stat. 862, 867–868, § 122 provided for the computation and carry-over of net operating losses without expressly relating them to a given taxpayer. Section 153 (a) of the Revenue Act of 1942, c. 619, 56 Stat. 798, 847–848, amended § 122 (b) not only to allow carry-backs for the first time, but also to provide, as to both carry-backs and carry-overs, that it was only the net operating losses of "the taxpayer" which could be so utilized.

the aggregate of the net operating loss carry-backs and carry-overs applicable to a given taxable year is the "net operating loss deduction" for the purposes of § 23 (s) (§ 122 (c)).

We are concerned here with a claim to carry over an operating loss to the immediately succeeding taxable year. The particular provision on which petitioner's case rests is as follows:

> "If for any taxable year beginning after December 31, 1947, and before January 1, 1950, *the taxpayer* has a net operating loss, such net operating loss shall be a net operating loss carry-over for each of the three succeeding taxable years . . . ." (Emphasis supplied.) § 122 (b)(2)(C), 64 Stat. 937, 938, 65 Stat. 505, 26 U. S. C. § 122 (b)(2)(C).

The controversy centers on the meaning of "the tax-payer." [2] The contentions of the parties require us to decide whether it can be said that petitioner, a combination of 16 sales businesses, is "the taxpayer" having the pre-merger losses of three of those businesses.

In support of its denial of the carry-over, the Government argues that this statutory privilege is not available unless the corporation claiming it is the same taxable entity as that which sustained the loss. In reliance on *New Colonial Co.* v. *Helvering,* 292 U. S. 435, and cases following it,[3] the Government argues that sepa-

---

[2] These words have been omitted from the new provisions of the Internal Revenue Code of 1954 relating to carry-backs and carry-overs after corporate acquisitions of assets of another corporation. See §§ 381, 382.

[3] *E. g., Standard Paving Co.* v. *Commissioner,* 190 F. 2d 330; *Weber Flour Mills Co.* v. *Commissioner,* 82 F. 2d 764; *Pennsylvania Co.* v. *Commissioner,* 75 F. 2d 719; *Shreveport Producing & Refining Co.* v. *Commissioner,* 71 F. 2d 972; *Brandon Corp.* v. *Commissioner,* 71 F. 2d 762.

rately chartered corporations are not the same taxable entity. Petitioner, on the other hand, relying on *Helvering* v. *Metropolitan Edison Co.,* 306 U. S. 522, and cases following it,[4] argues that a corporation resulting from a statutory merger is treated as the same taxable entity as its constituents to whose legal attributes it has succeeded by operation of state law. However, we find it unnecessary to discuss this issue since an alternative argument made by the Government is dispositive of this case. The Government contends that the carry-over privilege is not available unless there is a continuity of business enterprise. It argues that the prior year's loss can be offset against the current year's income only to the extent that this income is derived from the operation of substantially the same business which produced the loss. Only to that extent is the same "taxpayer" involved.

The requirement of a continuity of business enterprise as applied to this case is in accord with the legislative history of the carry-over and carry-back provisions. Those provisions were enacted to ameliorate the unduly drastic consequences of taxing income strictly on an annual basis. They were designed to permit a taxpayer to set off its lean years against its lush years, and to strike something like an average taxable income computed over a period longer than one year.[5] There is, however, no indication in their legislative history that these provi-

---

[4] *E. g., Newmarket Manufacturing Co.* v. *United States,* 233 F. 2d 493; *E. & J. Gallo Winery* v. *Commissioner,* 227 F. 2d 699; *Stanton Brewery, Inc.* v. *Commissioner,* 176 F. 2d 573; *Koppers Co.* v. *United States,* 133 Ct. Cl. 22, 134 F. Supp. 290.

[5] See *Lewyt Corp.* v. *Commissioner,* 349 U. S. 237, 243–244 (dissenting opinion); *Manning* v. *Seeley Tube & Box Co.,* 338 U. S. 561, 566–567; *Stanton Brewery, Inc.* v. *Commissioner,* 176 F. 2d 573, 574; H. R. Rep. No. 855, 76th Cong., 1st Sess. 9–10; S. Rep. No. 1631, 77th Cong., 2d Sess. 51–52.

sions were designed to permit the averaging of the pre-merger losses of one business with the post-merger income of some other business which had been operated and taxed separately before the merger. What history there is suggests that Congress primarily was concerned with the fluctuating income of a single business.[6]

This distinction is recognized by the very cases on which petitioner relies. In *Stanton Brewery, Inc.* v. *Commissioner,* 176 F. 2d 573, 577, the Court of Appeals stressed the fact that the merging corporations there involved carried on "essentially a *continuing enterprise,* entitled to all . . . benefits [of the carry-over provisions] in ameliorating otherwise harsh tax consequences of fluctuating profits or expanding business." (Emphasis supplied.) And in *Newmarket Manufacturing Co.* v. *United States,* 233 F. 2d 493, 497, the court expressly distinguished the case before it from the instant case on the ground that there "one single business" was involved

---

[6] The House Committee on Ways and Means, reporting on § 122 as it was originally added to the 1939 Code by the Revenue Act of 1939, c. 247, 53 Stat. 862, 867–868, stated that—

"The bill, together with the committee amendments, permits taxpayers to carry over net operating business losses for a period of 2 years. Prior to the Revenue Act of 1932, such 2-year carry-over was allowed. No net loss has ever been allowed for a greater period than 2 years. In the Revenue Act of 1932, the 2-year net loss carry-over was reduced to 1 year and in the National Industrial Recovery Act the net loss carry-over was entirely eliminated. As a result of the elimination of this carry-over, *a business* with alternating profit and loss is required to pay higher taxes over a period of years than *a business* with stable profits, although the average income of the two firms is equal. New enterprises and the capital-goods industries are especially subject to wide fluctuations in earnings. It is, therefore, believed that the allowance of a net operating business loss carry-over will greatly aid business and stimulate new enterprises." (Emphasis supplied.) H. R. Rep. No. 855, 76th Cong., 1st Sess. 9.

in the merger, while in this case there were "several businesses." [7]

This difference is not merely a matter of form. In the *Newmarket* case, *supra,* a corporation desiring to change the state of its domicile caused the organization of a new corporation and merged into it. The new corporation sought to carry back its post-merger losses to the pre-merger income of the old corporation. But for the merger, the old corporation itself would have been entitled to a carry-back. In the present case, the 16 sales corporations, prior to the merger, chose to file separate income tax returns rather than to pool their income and losses by filing a consolidated return. Petitioner is attempting to carry over the pre-merger losses of three business units which continued to have losses after the merger. Had there been no merger, these businesses would have had no opportunity to carry over their losses. If petitioner is permitted to take a carry-over, the 16 sales businesses have acquired by merger an opportunity that they elected to forego when they chose not to file a consolidated return.

We do not imply that a question of tax evasion or avoidance is involved. Section 129 (a) of the 1939 Code, as amended, does contain provisions which may vitiate

---

[7] *Koppers Co.* v. *United States,* 133 Ct. Cl. 22, 134 F. Supp. 290, also involves a situation in which the corporation resulting from the merger carried on essentially the same taxable enterprise as before, since the merged corporations had been filing consolidated tax returns. *E. & J. Gallo Winery* v. *Commissioner,* 227 F. 2d 699, is inconclusive on this point since the opinion does not disclose whether or not a continuing enterprise was involved. Cf. § 382 (a) of the Internal Revenue Code of 1954 relating to the purchase of a corporation and change in its trade or business. Under circumstances there defined, that section precludes a carry-over by the *same* corporation, unless it continues to engage in "substantially the same" trade or business as before the change in ownership. § 382 (a) (1) (C).

a tax deduction that was made possible by the acquisition of corporate property for the "principal purpose" of tax evasion or avoidance.[8]  And that section is inapplicable here since there was no finding that tax evasion or avoidance was the "principal purpose" of the merger. The fact that § 129 (a) is inapplicable does not mean that petitioner is automatically entitled to a carry-over.   The availability of this privilege depends on the proper interpretation to be given to the carry-over provisions.   We find nothing in those provisions which suggests that they should be construed to give a "windfall" to a taxpayer who happens to have merged with other corporations. The purpose of these provisions is not to give a merged

---

[8] The Revenue Act of 1943, c. 63, 58 Stat. 21, 47, by § 128, added to the 1939 Code the following section:

"SEC. 129.  ACQUISITIONS MADE TO EVADE OR AVOID INCOME OR EXCESS PROFITS TAX.

"(a) DISALLOWANCE OF DEDUCTION, CREDIT, OR ALLOWANCE.—If (1) any person or persons acquire, on or after October 8, 1940, directly or indirectly, control of a corporation, or (2) any corporation acquires, on or after October 8, 1940, directly or indirectly, property of another corporation, not controlled, directly or indirectly, immediately prior to such acquisition, by such acquiring corporation or its stockholders, the basis of which property, in the hands of the acquiring corporation, is determined by reference to the basis in the hands of the transferor corporation, and the principal purpose for which such acquisition was made is evasion or avoidance of Federal income or excess profits tax by securing the benefit of a deduction, credit, or other allowance which such person or corporation would not otherwise enjoy, then such deduction, credit, or other allowance shall not be allowed.  For the purposes of clauses (1) and (2), control means the ownership of stock possessing at least 50 per centum of the total combined voting power of all classes of stock entitled to vote or at least 50 per centum of the total value of shares of all classes of stock of the corporation."

See H. R. Rep. No. 871, 78th Cong., 1st Sess. 24, 49–50; S. Rep. No. 627, 78th Cong., 1st Sess. 26–27, 58–61.

taxpayer a tax advantage over others who have not merged. We conclude that petitioner is not entitled to a carry-over since the income against which the offset is claimed was not produced by substantially the same businesses which incurred the losses.[9]

The judgment of the Court of Appeals is

*Affirmed.*

MR. JUSTICE DOUGLAS dissents.

MR. JUSTICE WHITTAKER took no part in the consideration or decision of this case.

---

[9] We do not pass on situations like those presented in *Northway Securities Co.* v. *Commissioner,* 23 B. T. A. 532; *Alprosa Watch Corp.* v. *Commissioner,* 11 T. C. 240; *A. B. & Container Corp.* v. *Commissioner,* 14 T. C. 842; *W A G E, Inc.* v. *Commissioner,* 19 T. C. 249. In these cases a *single* corporate taxpayer changed the character of its business and the taxable income of one of its enterprises was reduced by the deductions or credits of another.