*Decisions will be entered under Rule 50.*

BRITISH MOTOR CAR DISTRIBUTORS, LTD., A CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 63520. Filed November 26, 1958.

*Frederic T. Leo, Esq.*, and *Clyde C. Sherwood, Esq.*, for the petitioner.

*Charles W. Nyquist, Esq.*, for the respondent.

### OPINION.

TIETJENS, *Judge:* The Commissioner determined deficiencies in income and excess profits tax of $137,057.99 and $31,846.12 for the fiscal years ended October 31, 1952, and October 31, 1953, respectively.

The only issue for decision is whether petitioner is entitled to carry over against its income from the sale of automobiles and parts in the taxable years, net operating losses sustained by Empire Home Equipment Co., Inc., in its fiscal years ended in 1949, 1950, and 1951.

All of the facts are stipulated, are so found, and the stipulation together with the pertinent exhibits are included herein by this reference.

Petitioner is a California corporation with offices in San Francisco, California. Its income and excess profits tax returns were filed with the district director of internal revenue at San Francisco, California.

Empire Home Equipment Co., Inc. (hereafter sometimes called Empire), was incorporated under the laws of California on November 13, 1948. Empire engaged in the business of selling home appliances at wholesale and retail. During its fiscal years ended in 1949, 1950, and 1951, Empire incurred substantial net operating losses. In December of 1949 Empire's lease of its premises at 40 Drumm

Street in San Francisco was canceled. Unamortized leasehold improvements were written off by it in January 1950. In February 1950 its merchandise inventory was liquidated in bulk at a considerable loss. All of its furniture and fixtures were sold by February 28, 1950. On April 1, 1950, its accounts receivable were sold. A certified public accountant who handled the accounting and prepared the Federal income tax returns for Empire was also the accountant for a partnership (hereafter called the partnership) doing business as British Motor Car Company. The partnership consisted of Kjell H. Qvale who had an 85 per cent interest and his wife who had a 15 per cent interest. This partnership had existed from about May 1, 1948, continuously to the present time, and from about May 1, 1948, to November 30, 1951, the partnership engaged at San Francisco, California, and elsewhere in northern California, in the business of importing, distributing, and selling foreign automobiles and parts. The partnership, as appears below, thereafter became and still is the owner of the majority of common stock of Empire.

On September 11, 1951, the partnership submitted a proposal to Empire whereby the partnership would acquire certain stock of Empire under the terms and conditions of an offer made on that date. The offer was conditioned, *inter alia*, that Empire would increase its authorized capital, would change its name, and would do all things necessary to put the partnership in complete possession of the business. The offer was accepted and the conditions met.

On November 2, 1951, Empire changed its name to British Motor Car Distributors, Ltd.

On or about November 30, 1951, the partnership acquired 42,126 shares of the common stock of British Motor Car Distributors, Ltd., from its then stockholders. Immediately thereafter, the partnership exchanged its net assets (exclusive of the 42,126 shares) having a book value of $159,238.04, for 15,923 shares of stock of British Motor Car Distributors, Ltd. British Motor Car Distributors, Ltd., had an authorized capital stock of 60,000 shares and the stock acquisitions by the partnership gave it control of petitioner.

In its income tax and excess profits tax returns for its years ended in 1952 and 1953, petitioner carried forward the net operating losses that it had sustained in the appliance business in its fiscal years ended in 1949, 1950, and 1951.

The Commissioner disallowed the claimed carry forward, explaining in the statement accompanying the deficiency notice, "It is held the deduction is not allowable within the meaning and intendment of the applicable provisions of the Internal Revenue Code (1939)."

The Commissioner's argument on brief in support of the disallowance may be summarized as follows:

(a) The petitioner and Empire Home Equipment Co., Inc., are different business enterprises and are not the same taxpayer within the meaning of the operating loss carryover provisions of the Internal Revenue Code of 1939, citing *Libson Shops, Inc.* v. *Koehler*, 353 U. S. 382.

(b) Furthermore, the allowance of the net operating loss deduction is prohibited by section 129, I. R. C. 1939.[1]

(1) Tax avoidance was the only motive for the acquisition of petitioner's stock by the Qvales, doing business as British Motor Car Company.

(2) Allowance of the claimed net operating loss deduction would secure a benefit to petitioner's sole stockholder, the partnership consisting of the Qvales.

(3) The benefit which would result to the acquiring stockholders from the allowance to the corporation of the loss carryover is the type of benefit referred to in section 129 of the 1939 Code, and accordingly the provisions of that section apply in the instant case.

With reference to the applicability of *Libson Shops, Inc.* v. *Koehler*, *supra*, we do not understand the opinion of the Supreme Court in that case to cut as deeply as the Commissioner contends. There, 16 sales corporations were merged into petitioner and the effect "was to convert 16 retail businesses and one managing agency, reporting their incomes separately, into a single enterprise filing one income tax return." The Supreme Court held that the petitioner could not make use by way of carryover of the previously sustained net operating losses of some of the merged corporations. This conclusion was apparently based upon a holding that petitioner was not the same taxable entity as that which sustained the loss and reliance was placed on the interpretation of the term "the taxpayer" as it is used in section 122 (b) (2), I. R. C. 1939. The Commissioner makes use of some of the language of the Supreme Court in *Libson Shops* in his argument here, but we think the language is not controlling, first because the fact situations in *Libson* and the case before us are dissimilar and

---

[1] SEC. 129. ACQUISITIONS MADE TO EVADE OR AVOID INCOME OR EXCESS PROFITS TAX.

(a) DISALLOWANCE OF DEDUCTION, CREDIT, OR ALLOWANCE.—If (1) any person or persons acquire, on or after October 8, 1940, directly or indirectly, control of a corporation, or (2) any corporation acquires, on or after October 8, 1940, directly or indirectly, property of another corporation, not controlled, directly or indirectly, immediately prior to such acquisition, by such acquiring corporation or its stockholders, the basis of which property, in the hands of the acquiring corporation, is determined by reference to the basis in the hands of the transferor corporation, and the principal purpose for which such acquisition was made is evasion or avoidance of Federal income or excess profits tax by securing the benefit of a deduction, credit, or other allowance which such person or corporation would not otherwise enjoy, then such deduction, credit, or other allowance shall not be allowed. For the purposes of clauses (1) and (2), control means the ownership of stock possessing at least 50 per centum of the total combined voting power of all classes of stock entitled to vote or at least 50 per centum of the total value of shares of all classes of stock of the corporation.

second, and more strongly, because the Court in footnote 9 to *Libson* said:

We do not pass on situations like those presented in *Northway Securities Co.* v. *Commissioner*, 23 B. T. A. 532; *Alprosa Watch Corp.* v. *Commissioner*, 11 T. C. 240; *A. B. & Container Corp.* v. *Commissioner*, 14 T. C. 842; *W A G E, Inc.*, v. *Commissioner*, 19 T. C. 249. In these cases a *single* corporate taxpayer changed the character of its business and the taxable income of one of its enterprises was reduced by the deductions or credits of another.

The case before us involves the same kind of situation as that described in the footnote referred to above. Here we have a single corporate taxpayer which changed the character of its business and claims the right to reduce the taxable income of one of its enterprises, the automobile business, by the losses of another, the appliance business. The cases cited in the footnote have held that this could be done, and so far as we can see, the Supreme Court has not held otherwise in *Libson*.

While it is true that section 129 did not control the situation in *Alprosa Watch Corporation*, 11 T. C. 240, the Commissioner nevertheless made the "suggestion" that the legal principles set forth in that section "may well have been the law existing prior" to its enactment. In disposing of this argument the Court said:

There is considerable doubt in our minds that, even assuming that this case were to be governed by section 129, the facts constitute a situation condemned by that section. That section would seem to prohibit the use of a deduction, credit, or allowance only by *the acquiring person or corporation* and not their use by the corporation whose control was acquired. [Emphasis supplied.]

While the Court's language in *Alprosa Watch* has been characterized as dictum by some (see Tarleau, "Acquisition of Loss Companies," 31 Taxes 1050, 1054), we have given effect to it, inferentially, at least, in *A. B. & Container Corporation*, 14 T. C. 842; *W A G E, Inc.*, 19 T. C. 249; and *T. V. D. Co.*, 27 T. C. 879, 886. In the latter case we said, "It is manifest from the unambiguous terms of section 129 that it applies only to an acquiring corporation." In the situation before us we have British Motor Car Distributors, Ltd., as petitioner. In effect, petitioner is the acquired corporation, its stock having been acquired by the partnership. It is petitioner, though its majority stock was acquired by the partnership, which is here seeking to make use of its previous losses. While its new stockholders *may* gain some tax advantage as stockholders because of petitioner's use of its losses, it is still the petitioner and not the stockholders who seeks to claim the benefit in the case before us. We think the possible benefit which *may* flow to the new stockholders is too tenuous a benefit to bring section 129 into play. The fact that petitioner originally bore a different name which was changed as part of the transaction in which the stock changed hands does not alter the situation. *Alprosa Watch*

*Corporation, supra; A. B. & Container Corporation*, 14 T.C. 842. Nor does the fact that there has been a change in the business of petitioner after the acquisition call for a change in the result. Such a change occurred in both the *Alprosa* and *A. B. & Container* cases.

The only possible difference we can see between those cases and the one before us is that here petitioner has made no attempt to prove that the partnership had a business purpose in gaining control of the stock of petitioner or that the stock acquisition was not done for the purpose of tax evasion. But this can make no difference if section 129, as we have held, has no application to the acquired corporation, the petitioner here. See *T. V. D. Co.* and *Alprosa, supra.*

Reviewed by the Court.

*Decision will be entered under Rule 50.*

MURDOCK, TURNER, RAUM, BRUCE, and ATKINS, *JJ.*, dissent.