**UNITED STATES of America,
Defendant, Appellant,**

v.

**NORTHERN RAILROAD, Plaintiff,
Appellee.**

**No. 6257.**

United States Court of Appeals
First Circuit.

July 29, 1964.

David I. Granger, Atty., Dept. of Justice, with whom Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and I. Henry Kutz, Attys., Dept. of Justice, W. Arthur Garrity, Jr., U. S. Atty., and Murray H. Falk, Asst. U. S. Atty., were on brief, for appellant.

Richard L. Braunstein, Washington, D. C., with whom Bernard J. Long and Dow, Lohnes & Albertson, Washington, D. C., were on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

HARTIGAN, Circuit Judge.

Plaintiff-appellee, Northern Railroad, brought this action in the District Court of the United States for the District of Massachusetts for the recovery of income taxes and interest thereon allegedly illegally assessed and collected. Judgment was rendered on October 18, 1963 against the defendant-appellant, United States of America, in the amount of $156,161.57 plus interest thereon at 6% from May 24, 1957.

The facts have been stipulated. Appellee is a railroad corporation organized

under the laws of New Hampshire in 1844. Prior to 1899 Northern acquired all of the stock of the Peterborough and Hillsborough Railroad and 97% of the capital stock of the Concord and Claremont (N.H.) Railroad, two other New Hampshire corporations. The properties of the three corporations formed an integrated and continuous track operation which functioned as the Northern Railroad Line. These properties were leased to the Boston and Lowell Railroad in 1889. The lease was assigned to the Boston and Maine Railroad in 1890 and since that time the combined line has been operated as a component part of the Boston and Maine Railroad system.

In 1945 the Boston and Maine Railroad purchased from Northern the properties and franchises of the two subsidiaries. The two subsidiaries continued thereafter to exist as corporations without assets or liabilities until they were dissolved in 1949.

For the years 1942 through 1945 Northern filed consolidated income tax returns with its two subsidiaries under the name of "Northern Railroad and the Affiliated Railroad Companies." In its consolidated return for the year 1945 as a result of losses sustained on the sale of track, right of ways and property incident thereto (e. g., bridges, trestles, station buildings) of its affiliates, Northern was allowed a consolidated net operating loss of $1,577,908.91. Part of this loss was utilized by way of carry-back to offset income shown on the 1943 and 1944 consolidated returns. The remaining portion of the loss was claimed as a carry-over deduction by Northern on its corporation income tax return for 1946, which it filed as a separate return in its own name. No returns were filed by the subsidiaries for 1946. The carry-over deduction was disallowed and Northern on May 24, 1957 paid additional taxes assessed against it for 1946 in the amount of $97,207.33 with interest thereon in the amount of $58,954.24. It is from Northern's recovery of these payments that the government appeals.

The government contends that Northern is not entitled to carry over to its separate corporate income tax return for 1946 the unused portion of the consolidated net operating loss from 1945 resulting from operating losses incurred in 1945 by its two subsidiaries, which continued in existence in 1946 without doing business and which filed no income tax return for 1946. The government also contends that under the doctrine of Libson Shops, Inc. v. Koehler, 353 U.S. 382, 77 S.Ct. 990, 1 L.Ed.2d 924 (1957) Northern in 1946 cannot be held to have been the same taxpayer which incurred the loss in 1945.

I

The statutory provision governing carry-over of net operating loss which is applicable here is § 122(b) (2) of the Internal Revenue Code of 1939. Also applicable is § 23.31(f) of Treas.Reg. 104 (1939 Code) as amended by T.D. 5244, 1943 Cum.Bull. 439, the pertinent portions of which provide:

> "The consolidated net operating loss * * * of an affiliated group for a consolidated return period beginning after December 31, 1941 * * * shall be used in computing the consolidated net operating loss deduction * * * notwithstanding that one or more corporations, members of the group, in the taxable year in which such loss * * * originates, makes separate returns (or join in a consolidated return made by another affiliated group) for a subsequent taxable year * * * but only to the extent that such consolidated net operating loss * * * is not attributable to such corporations; and such portion of such consolidated net operating loss * * * as is attributable to the several corporations making separate returns (or joining in a consolidated return made by another affiliated group) for a subsequent taxable year * * * shall be used by such corporations severally as carry-overs * * * in such sepa-

rate returns, or in such consolidated returns, of the other affiliated group. * * * "

■ Prior to the amendment the Consolidated Returns Regulations provided that all losses of an affiliated group were attributable to the common parent corporation, notwithstanding that a loss may have originated in a subsidiary corporation. Thus, the parent was given the loss deduction generated by a subsidiary even though the subsidiary was no longer included in a consolidated return filed by the parent. This reflected the view that for tax purposes the affiliated group was a single taxpayer—the common parent corporation: "Disregarding corporate forms, the business is a practical unit, which * * * [the parent] might just as well have carried on through branches or departments instead of through wholly-owned subsidiary corporations." S. Slater & Sons, Inc. v. White, 119 F.2d 839, 843 (1st Cir. 1941). The 1943 amended regulation granted greater economic freedom to the separating subsidiary and provided that the common parent corporation could not carry over to the subsequent taxable year a consolidated loss attributable to a subsidiary corporation which after leaving the affiliated group had made a separate return or joined in a consolidated return with another group. The government urges, however, that the amended regulation also did away with the single taxpayer concept, ending the opportunity of the common parent to utilize the loss even in those instances where the subsidiary did not file a separate return or join another group.

For the purpose of part I of this opinion it is not disputed that prior to the amended regulation Northern would have been allowed the loss deduction here in issue. In addition, there is ample authority to the effect that had Northern filed a consolidated return with its two inactive subsidiaries it would have had the benefit of their losses. Burnet v. Aluminum Goods Co., 287 U.S. 544, 53 S.Ct. 227, 77 L.Ed. 484 (1933); Hawaiian Trust Company Limited v. United States, 291 F.2d 761, 767 (9th Cir. 1961); Autosales Corporation v. Commissioner of Int. Rev., 43 F.2d 931 (2nd Cir. 1930); Joseph Weidenhoff, Inc., 32 T.C. 1222 (1961); but see Wier Long Leaf Lumber Co. v. Commissioner of Int. Rev., 173 F.2d 549 (5th Cir. 1949). Therefore, before this court can rule that a loss suffered by two subsidiaries, now inactive, one 100% and the other 97% owned by a common parent corporation, is unavailable to the parent and, for all practical purposes, dissipated,[1] this result should appear as specifically intended by the applicable regulations. See Acampo Winery & Distilleries, Inc., 7 T.C. 629, 640 (1946).

In the regulations themselves there is little support for the government's position. The answer to the government's contention that "No statement is made in the regulation that a parent company which files a separate return in a year following or preceding the consolidated return period can use a loss not incurred by it" is, as was stated by the court below, that neither does the regulation state that the carryover deduction is allowable in a subsequent year only when the corporation to which it is attributable joins in a consolidated return for the subsequent year. Nor does the regulation provide that a loss sustained by a corporation while a member of an affiliated group belong solely to that corporation. Rather, the provision enabling the separating corporation to utilize its own loss is clearly limited to the two instances where the subsidiary would be in a

1. The government suggests that the two subsidiaries could have returned to operating status by the purchase of other assets in 1946 and in later years make use of the loss themselves. It is doubtful, however, whether a loss carry-over would be allowed in such a situation. In a similar case an attempted carry-over was denied because the inactive corporation which purchased other assets failed to meet the "requirement of a continuity of business enterprise." J. G. Dudley Co., 36 T.C. 1122 (1961).

position to make use of such a loss. The two cases cited by the government,[2] while containing language seemingly applicable here, concerned an attempt to carry back a loss sustained by one member of an affiliated group during a consolidated period to offset pre-affiliation income of the parent corporation which had filed a separate return in a prior taxable year. As pointed out by appellee, to have allowed the carry back in that instance to the parent in its earlier year would have prevented the subsidiaries from using the losses themselves as carryovers if they so desired in later years. Here, the two subsidiaries were without assets and liabilities. If the parent was not allowed the loss it would have inured to no one's benefit save the government's.

In Joseph Weidenhoff, Inc., supra, an affiliated group was allowed to carry forward in its consolidated returns for the years 1950 and 1951 and 1948 and 1949 operating losses of a wholly owned subsidiary which had sold all its operating assets and terminated its business operations as of September 1949, although continuing to be included in the consolidated returns filed by the affiliated group for the years 1948 through 1952. The court held that "the businesses which suffered the 1948 and 1949 losses were the businesses of the affiliated group, and [the parent corporation] which owned all the stock of [the subsidiary] was the taxpayer which suffered the actual economic loss." 32 T.C. at 1237. The same economic picture is present in this case and is discussed later. It is only the filing of a separate return by Northern which truly distinguishes the two cases.

The case of F. C. Donovan, Inc. v. United States, 261 F.2d 470 (1st Cir. 1958), suggests the immateriality of that distinction. There, a parent corporation and its wholly owned subsidiary joined

in a consolidated return for 1945. For the year 1946 both filed separate returns. As of December 31, 1946 the parent acquired all the assets and liabilities of its subsidiary and no further returns were filed by the subsidiary. The parent corporation filed separate returns in 1947 and 1948. In 1947 the parent suffered a loss and this court held that the parent could carry back the loss sustained by it in the separate return year to off-set income of its subsidiary shown on the 1945 consolidated return. Here, the parent sought to carry over a portion of a consolidated net operating loss of a subsidiary in a consolidated return year to off-set income shown on its separate return for a later year.

## II

■ The district court held that Northern was carrying on in 1946 the same business carried on by its subsidiaries in 1945, the only difference being that "because of the sale of the property of the subsidiaries, the extent of the facilities which it leased in 1946 was less than that of the combined facilities leased in 1945." The court went on to state that "mere reduction in the extent of a taxpayer's operations is not a change in nature of these operations" and that while the 1945 loss was technically a loss of the subsidiary corporations, in fact the economic burden of the loss fell on the parent corporation and, therefore, ultimately on its stockholders. Relying on Donovan and Newmarket Manufacturing Company v. United States, 233 F.2d 493 (1st Cir. 1956), cert. denied, 353 U.S. 983, 77 S.Ct. 1279, 1 L.Ed.2d 1142 (1957), the court found the circumstances in this case to meet the "fundamental criterion" that the business enterprise which in 1946 sought to take advantage of the 1945 loss be, in economic reality, the same enterprise which suffered the loss in 1945.

2. American Trans-Ocean Nav. Corp. v. Commissioner of Int. R., 229 F.2d 97 (2nd Cir. 1956) and Trinco Industries, Inc., 22 T.C. 959 (1954). In addition, the effort in these two cases was to carry the loss backward to a different taxable entity. As discussed infra, the enterprise taking advantage of the loss in this case is in economic reality the same business which suffered the loss.

The government denies that Northern has met this criterion. It argues that under the doctrine set forth in Libson Shops, Inc. v. Koehler, supra, Northern in 1946 cannot be held to have been the same taxpayer who suffered the loss in 1945 and, therefore, cannot come under section 122(b) (2) of the 1939 Code. That section provides that "if for any taxable year * * * the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carry-over for each of the two succeeding taxable years." This creates the question as to whether the "taxpayer" seeking the carry-over was the same "taxpayer" which suffered the loss.

In Libson a corporation formed by the merger of separately incorporated businesses was denied the right to carry-over a pre-merger net operating loss of three of its components against its post merger income. The court stated that the controversy centered "on the meaning of 'the taxpayer'" as used in section 122(b) (2) (c) of the 1939 Code, as amended, and to be decided was "whether it can be said that petitioner, a combination of 16 sales businesses, is 'the taxpayer' having the pre-merger losses of three of those businesses." The court found the government's argument that the carry-over privilege "is not available unless there is a continuity of business enterprise" to be "dispositive of the case." It held that a prior year's loss can be offset against the current year's income only to the extent that the income is derived from substantially the same business which incurred the loss. The evidence showed that the 16 pre-merger corporations reported their income separately and that three of them were operated as a loss. The Court pointed out that if the new corporation was allowed to deduct carryover losses the 16 former corporations would secure an opportunity they elected to forego when they chose not to file a consolidated return. The Court could find no indication in the legislative history that Congress intended "to permit the averaging of the pre-merger losses of one business with the post-merger income of some other business which had been operated and taxed separately before the merger. What history there is suggests that Congress primarily was concerned with the fluctuating income of a single business."

The inference the Court seems to make in Libson is that had the sales corporations filed consolidated returns prior to the merger, the pre-merger losses of the three loss companies could have been included in a net operating loss carryover to the continuing corporation following the merger. Joseph Weidenhoff, Inc., supra, 32 T.C. at 1237; see 16 Tax Law Rev. 397.[3]

In Donovan the court found Libson to mean that the continuity of the same business rather than the continuity of the same corporate structure is the test of a taxpayer's right to deduct losses incurred in a previous year. In rejecting the government's position that the parent was an entity, separate and apart from its subsidiary and accordingly could not offset an operating loss which it sustained in 1947, a separate return year, as a carryback against the 1945 income of its subsidiary, the court emphasized that "[t]he fact that in the year at bar, 1945, consolidated returns were filed underscores the economic business identity [of parent and subsidiary]." Further, the court added at 261 F.2d 475:

> "Once one gets over the hurdle * * * that the carry-back privilege is available only where the identical 'legal entity' which had earned the income suffered the loss, it would seem a sterile technicality, and wholly unrealistic, to impute to the Congress an intention, in § 122(b) * * * to make the loss carry-back dependent upon the mere form in which the reorganization is cast * * * ."

3. The government appears to have adopted this view of the case in Rev.Rul. 58-603, 1958-2 Cum.Bull. 147.

In this case the assets held by the subsidiaries of Northern formed part of the Northern Railroad Line and were operated as one unit of transportation. The subsidiaries were not made party to the lease of the Line and payments under the lease were made solely to Northern, such payments reflected on its consolidated returns filed in 1943, 1944 and 1945 as its own income. It is of course true that the assets sold by Northern were held in the name of its two subsidiaries. But the relationship of the parent and its subsidiaries, all holding assets subject to the same lease, and constituting "an integrated and continuous track operation" strengthens the contention that, in reality, what we are dealing with here is *one business, one economic unit*. It is an artificial distinction which would limit to the subsidiaries the loss maintained by the sale of a part of the Northern Railroad Line.

Judgment will be entered affirming the judgment of the district court.