**Asa E. CALVIN and Lois Calvin, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 8513.**

United States District Court D. Colorado.

Nov. 19, 1964.

the individual possessed or used drugs in the state.

Kenneth L. Smith, Denver, Colo., for plaintiffs.

Lawrence M. Henry, U. S. Atty., for the District of Colorado, Denver, Colo., C. Guy Tadlock, Acting Asst. Atty. Gen., C. Moxley Featherston, Jerome Fink and Burton A. Schwalb, Dept. of Justice, Washington, D. C., for defendant.

DOYLE, District Judge.

The plaintiff Asa E. Calvin, seeks a refund of federal income taxes paid by him during the calendar year 1959. The matter is before the Court on stipulated facts, from which stipulation it appears that Asa E. Calvin married Lois Wood Calvin in December, 1959. The plaintiff Lois Calvin, had been in business (prior to her marriage) during the years 1954 through 1958. From 1954 through 1957 she sustained net operating losses in her business as follows: in 1954, $4,720.33; in 1955, $5,664.19; in 1956, $12,556.02; in 1957, $5,604.25, or a total of $28,-544.79. During the year 1958 she applied an operating loss carryover to her federal individual income tax return in the amount of $9,425.43, so that the balance of losses to be carried over to the taxable year 1959 and subsequent years was $19,119.36.

On a separate return for 1959, Asa E. Calvin reported adjusted gross income of $8,044.19 and income tax liability of $1,547.19 together with withholding tax of $1,933.99. He claimed an overpayment and obtained a refund. Lois Calvin, on her separate return for 1959, claimed a loss of $13,854.70, and hence no income tax liability. This was subsequently adjusted by the Commissioner of Internal Revenue whereby part of her available operating loss carryover was used to offset her 1959 income.

On or about July 10, 1962, the plaintiffs filed a joint income tax return for the year 1959 wherein they deducted the loss carryover of Lois Calvin while she was a single woman, applying it to both of their incomes. However, the Commissioner would allow the loss carryover to be applied only to the income of Lois Calvin for the year 1959. Plaintiffs had claimed a total refund of $1,547.19. The Commissioner, however, limited the loss carryover to the $9,891.48 which was the determined adjusted gross income of Lois Calvin for the year 1959. The Commissioner granted a refund of $107.14 but denied the balance of the claim in the amount of $1,440.05.

The plaintiffs contend that as husband and wife filing a joint return for the year 1959 they were entitled to be treated as a single, integrated taxable unit so that operating losses of Lois Calvin incurred as a single woman should be applied against the total 1959 income of both of them.

On the other hand, the defendant contends that the losses were sustained by Lois Calvin while she was unmarried and consequently she alone can utilize them; that the subsequent marriage and the making of a joint return does not permit the application of a prior net operating loss sustained by one party to the net income of another party, a separate taxable entity. This, then, is the issue for determination.

Plaintiffs rely on the Internal Revenue Code of 1954, section 6013, providing for the making of joint returns by married persons notwithstanding that one of the spouses has no income, and on Treasury Regulation 1.172-7(b) which provides:

"From separate to joint return— If a husband and wife, making a joint return for any taxable year, did not make a joint return for any of the taxable years involved in the computation of a net operating loss carryover or a net operating loss carryback to the taxable year for which the joint return is made, such separate net operating loss carryover or net operating loss carryback is a joint net operating loss carryover or joint net operating loss carryback to such year."

And also upon Helvering v. Janney, 311 U.S. 189, 61 S.Ct. 241, 85 L.Ed. 118, 131 A.L.R. 980 (1940); Taft v. Helvering, 311 U.S. 195, 61 S.Ct. 244, 85 L.Ed. 122 (1940); and an example provided

by Prentice-Hall Service, PH 1964, ¶ 13,762–B(d).

Basically, plaintiffs contend that under the regulation and the cited cases a joint return is the return of one tax unit, in the aggregate, both as to income and deductions; that this is true not only with respect to capital gains and losses as held in Janney, supra, but that it applies to all other deductions regardless of their origin, unless the Internal Revenue Code specifically denies or limits the same.

The regulation quoted is not free from ambiguity in that it does not expressly limit itself to losses incurred during the marriage. It is, of course, equally arguable that its fundamental assumption is that the parties were married and could have made a joint return for the taxable years involved in a loss carryover. Due, however, to the presence of this ambiguity it is necessary to consider prior as well as contemporaneous and subsequent circumstances in an effort to ascertain whether Congress actually intended to allow married persons to apply pre-marital operating losses to net income reported after marriage and to do so indiscriminately.

A relatively early decision which throws some light on this question is that of Van Vleck v. Commissioner of Internal Revenue, 31 E.T.A. 433, aff'd. (2 Cir.) 80 F.2d 217; cert. denied 298 U.S. 656, 56 S.Ct. 676, 80 L.Ed. 1382. There the husband and wife filed separate returns for 1929, the husband reporting a net loss. In 1930, the husband and wife filed a joint return showing that the husband had a net loss for 1930, whereas the wife had a net income in excess of her husband's losses for 1930 and 1929. It was held that, while the husband's net loss for 1930 could be applied against his wife's income for 1930, his net loss for 1929 could not be carried over to 1930. The present regulation quoted above is, of course, contrary to this decision.

The Van Vleck case illustrates the rule enunciated in New Colonial Ice Company v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348 (1934), that "the taxpayer who sustained the loss is the one to whom the deduction shall be allowed." The application of this rule to corporate taxpayers was recently reaffirmed, and indeed revitalized, in Libson Shops v. Koehler, 353 U.S. 382, 77 S.Ct. 990, 1 L.Ed.2d 924 (1957) where the court articulated the underlying policy of the carryover provisions as follows:

"Those provisions were enacted to ameliorate the unduly drastic consequences of taxing income strictly on an annual basis. They were designed to permit a taxpayer to set off its lean years against its lush years, and to strike something like an average taxable income computed over a period longer than one year." 353 U.S. 382 at 386, 77 S.Ct. 990 at 993.

In the New Colonial case, supra, the assets and business of an older corporation were taken over by a new corporation specifically organized for that purpose, and the new corporation contended that it could deduct from its gross income the net loss sustained by the older corporation. The deduction was denied. In Libson Shops, supra, seventeen corporations were merged, and the surviving corporation sought to deduct the premerger net losses of three of the corporations. The deduction was denied. While these two cases dealt with the carryover provisions, the Janney and Taft decisions so strongly relied upon by plaintiffs did not: Janney held that capital losses incurred by one spouse could be used to offset capital gains realized by the other spouse in the same year; Taft held that the amount of allowable charitable contributions should be computed on the basis of the aggregate income reported in a joint return. The issue, therefore, is whether the broad statements regarding joint returns in Taft and Janney override the rule regarding net operating loss carryovers as set forth in New Colonial and Libson Shops.

In contexts other than that of joint returns by husband and wife the courts

have held that carryover losses sustained by one taxpayer cannot be applied against the income of another taxpayer. In Woolford Realty Co. v. Rose, 286 U.S. 319, 52 S.Ct. 568, 76 L.Ed. 1128 (1932), an effort was made to deduct losses of one corporation suffered prior to affiliation from the other affiliated corporations' income. In rejecting this effort the Supreme Court, through Mr. Justice Cardozo, said:

> "The petitioner was prosperous in 1927, and so far as the record shows for many years before. Piedmont was unfortunate in 1927, and unfortunate in the years preceding. The petitioner, affiliating in 1927, has been allowed the loss suffered by Piedmont through the business of that year as a permissible deduction from the consolidated balance. What it claims is a right to deduct the losses that were suffered in earlier years when the companies were separate. To such an attempt the reaction of an impartial mind is little short of instinctive that the deduction is unreasonable and cannot have been intended by the framers of the statute. Analysis of the sections shows that there is no gap between what they wrote and what in reason they must have meant." 286 U.S. 319 at 330, 52 S.Ct. 568 at 570.

The principle of the Woolford case, that an affiliated group of corporations cannot deduct from income reported in a consolidated return for any one year a pre-affiliation loss of a member of the affiliated group, continues to be the law. Capital Service Inc. v. Commissioner of Internal Revenue, T.Ct.Memo., 1949, aff'd. 9 Cir., 180 F.2d 579; Olivier v. Patterson, D.C., 151 F.Supp. 709 (1957), aff'd. 5 Cir., 249 F.2d 894; Phinney v. Houston Oil Field Material Co., 5 Cir., 252 F.2d 357 (1958); A. R. Ruppert Plumbing & Heating, 39 T.C. 284 (1963). Illustrations of the rule's applicability to non-corporate taxpayers, other than Van Vleck, include Estate of R. R. Russell, 34 E.T.A. 715 and I.T. 1562, II–1 Cum.Bull. 73 (1923). The

last two cited cases hold that a net operating loss sustained by a decedent may not be carried over and deducted by his estate.

It can be said, of course, that the analogy between affiliated corporations filing consolidated returns and spouses filing a joint return is imperfect. It is nonetheless at least an arguable parallel. Actually, the spouses have much more individuality before the law than have affiliated corporations; for one thing, spouses can file at their option individual tax returns, whereas affiliated corporations must choose, once and for all time, whether they shall file one consolidated return or individual returns. It might also be pointed out that the joint return of husband and wife does not pose the same opportunities for tax avoidance as does the consolidated return of the affiliated corporations. Nevertheless, the net operating loss carryover deduction has, from its inception in 1918, been available to taxpayers conducting a business. While the statute has excluded certain businesses from the scope of the carryover provisions, it has not distinguished between corporations on one hand, and individuals, partners, trusts, or estates on the other hand: all, with certain exceptions, may qualify for and obtain the benefits of the carryover provisions, and presumably the underlying policies of these provisions apply alike to all. In short, the corporation cases speak strongly for the proposition that only the taxpayer sustaining a loss may benefit from its carryover except where Congress has provided otherwise.

It is noteworthy that the joint return as well as the operating loss carryover principle have been recognized since about 1918, and Congress has not seen fit to specifically provide for the kind of interpretation which is here sought by the plaintiffs. The readiness of Congress to specifically provide exceptions to the above-mentioned rule is demonstrated by Section 642(h) of the 1954 Internal Revenue Code, enacted for the first time in 1954. This section now permits the beneficiaries of an estate or

trust to deduct, after termination, in their returns any net operating loss carryover sustained by the trust or estate. Other changes wrought by the 1954 Internal Revenue Code which deal with the problem of net operating loss carryovers are set forth in sections 381 (c) (1) and 382 thereof. In contrast, the Van Vleck decision was law at the time of the enactment of the 1939 Code, but notwithstanding this holding there was no effort on the part of Congress to distinguish the carryover provisions of the 1939 Internal Revenue Code from their counterpart in the Internal Revenue Act of 1928, those involved in Van Vleck.

■ The regulation here in question was adopted in 1941 pursuant to the 1939 Code; the present regulation promulgated pursuant to the 1954 Code is identical. This regulation has the force and effect of law unless it is unreasonable or plainly inconsistent with the statute. Fawcus Machine Co. v. United States, 282 U.S. 375, 378, 51 S.Ct. 144, 145, 75 L.Ed. 397. In overruling the Van Vleck decision, the regulation carves an exception to the rule that the benefit of the operating loss carryover must inure to the taxpayer sustaining the loss. To the extent that it permits losses realized by one spouse during marriage to offset income of the other spouse, this exception may well come within the ambit of the joint return provision. However, the extension of this exception to also permit premarital losses of one spouse to offset the other spouse's income is without foundation in the statute, and the regulation does not, as already noted, purport explicitly to effect this extension.

The case of McClure v. United States, 4 Cir., 228 F.2d 322 (1955), which dealt with the joint return of husband and wife, should be examined. Here the husband received in the taxable year more than eighty per cent of his total compensation earned for personal services over the prior twenty years. He sought to avail himself of the "spread-back" provision of Title 26 U.S.C. §

107(a). The District Court ruled, 131 F.Supp. 313, that the split income provision was applicable only during the period of coverture. On appeal, however, the Court of Appeals for the Fourth Circuit held that the income could be split over the entire "spread-back." The Court emphasized that the split income provision was expressly intended by Congress to make available to taxpayers in all states the advantages of taxpayers in community property states. This strong policy required the extension of joint return benefits beyond the period of coverture. The implication is clear that, absent such a policy, the scope of a joint return is limited to the years of marriage. No policy analogous to that regarding the split-income provision is apparent in the net operating loss carryover provisions. It should be noted that Congress in the 1954 Code, section 1304(c), anticipated the McClure decision and restricted the benefits of the spread-back to the taxpayer who earns the income. Thus, McClure is to be characterized as a lame duck decision, and the almost contemporaneous action of Congress indicates a reluctance on its part to extend joint return benefits to pre-marital years.

■ It is thus apparent that there is no authoritative pronouncement which answers or seeks to answer specifically the instant question. Plaintiffs offer the regulation which is ambiguous, and argue that the ambiguity, since it deals with a deduction, should be resolved in favor of the taxpayer. However, the evidence to the contrary, consisting of both decisions and action as well as inaction of Congress, is much more persuasive and we, therefore, do not feel justified in carving out a new exception which neither Congress nor the Commissioner of Internal Revenue has thus far, through a long period of administration and re-enactment, seen fit to recognize. It, therefore, must be held that the net operating losses sustained by the plaintiff Lois Calvin prior to marriage, while they can be applied to her income in subsequent years, cannot be applied to the

income of the plaintiff Asa E. Calvin. It is

Ordered that the complaint be dismissed and that judgment be entered in favor of the defendant and against the plaintiffs.