**FAWICK CORPORATION, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 15969.

United States Court of Appeals
Sixth Circuit.

March 25, 1965.

Edward C. Crouch, Cleveland, Ohio (Richard R. Hollington, Jr., Marshman, Hornbeck Hollington, Steadman & McLaughlin, Cleveland, Ohio, on the brief), for petitioner.

Edward Shillingburg, Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before MILLER, O'SULLIVAN and PHILLIPS, Circuit Judges.

O'SULLIVAN, Circuit Judge.

The question before us is whether under the 1939 Internal Revenue Code a net operating loss of a corporation, which occurred before another corporation was merged into it, could be carried forward to reduce profits accruing after the merger but attributable solely to that part of its business that was brought to it by the absorbed corporation.

Petitioner Fawick Corporation, under its earlier corporate name of Federal Motor Truck Company, was a manufacturer of motor trucks in Detroit, Michigan. Its stock was broadly held by some 2300 shareholders. In its 1950 tax year it suffered an operating loss of $1,132,-325. In 1952, a merger was effected whereby the Fawick Airflex Company, Inc., of Cleveland, Ohio, was merged into Federal Motor Truck Company, which remained as the surviving corporation under the new name of Federal Fawick Corporation. The Fawick Airflex Company had manufactured air-operated industrial clutches and brakes of types not used in automotive vehicles. The shares of Fawick Airflex Company were closely held by the Fawick family, and upon conclusion of the merger the former shareholders of Federal Motor Truck owned 48.8% and the former Fawick Airflex shareholders owned 51.2% of the outstanding shares of the reorganized Fawick corporation.[1] Following the merger, the respective enterprises of the merging companies were carried on as Federal Motor Truck Division at Detroit, and Fawick Airflex Division at Cleveland;[2] the Federal Division lost money, but the Airflex operation was profitable. For the years 1953 and 1955 petitioner Fawick Corporation's total operation realized profits which, for purposes of this opinion, must be treated as arising entirely from earnings of the Airflex Division. To such otherwise taxable income for the years 1953 and 1955, Fawick Corporation carried over a portion of the premerger 1950 loss of Federal Motor Truck Company of $1,132,325.00 sufficient, with other carryovers, to eliminate Fawick's tax liability for 1953 and 1955.

---

1. Immediately following the merger, the reorganized company's Board of seven directors was composed of three former Federal directors and four former Airflex directors. Two of the former Federal directors left in 1953, the year following the merger, and the third left in 1954 or 1955.

2. Fawick Airflex had instituted some activity and research looking to manufacture of automotive and truck brakes and this continued as Fawick Brake Division. This activity, however, is of no significance here.

Such carryover deduction was claimed upon the assumption that it was permitted under § 122 of the 1939 Internal Revenue Code. While the question of the legality of the foregoing carryover deductions is the basic issue here, it was presented in this case by the Commissioner's disallowance of other carryover deductions taken by Fawick in its returns for the years 1958 and 1959.

In 1954, Fawick sold all the assets of its Federal Motor Truck Division as a going concern and ceased the manufacture of motor trucks and parts. It changed its name to Fawick Corporation and its total operations were thereafter carried on in Cleveland at the plant of its Airflex Division. It sustained a loss of $1,416,675 on this 1954 sale and carried over parts of the resulting loss for 1954 as deductions from its 1958 and 1959 income. Such deductions were disallowed by the Commissioner upon his contention that the premerger 1950 loss of the Federal Motor Truck Company was improperly deducted from the 1953 and 1955 postmerger profits earned solely by the Airflex Division acquired in 1952.[3] From that premise, he asserted that "the 1954 net operating loss will first have to be applied against 1953 and 1955 postmerger income from the profitable clutch and brake operations [Airflex Division[4]]; and when this is done, the 1954 loss will be absorbed, with nothing remaining for carryover to the taxable years 1958 and 1959 which are here involved." (Opinion of Tax Court.) The Tax Court sustained the Commissioner in the decision now before us on petition for review. We agree with the Tax Court decision entered April 27, 1964.

The Tax Court concluded that there was not such a "continuity of business enterprise" between the premerger, unprofitable truck manufacture by Federal and the postmerger, profitable operations of the Airflex Division as to permit the attempted loss carryover. The Tax Court relied on Libson Shops, Inc. v. Koehler, 353 U.S. 382, 77 S.Ct. 990, 1 L.Ed.2d 924 (1957). We too consider it controlling. In Libson the same parties owned 17 corporations, each of 16 carrying on a single retail clothing store and the 17th providing management services. The 16 were all merged into the management corporation, which thereafter conducted the entire business as a single operation. Prior to the merger, three of the component corporate retail stores had net operating losses. After the merger, these stores continued their losses, but the reorganized corporation attempted to carry over their premerger losses against the subsequent profits earned by the overall operation. The Supreme Court thwarted this attempt, saying:

"The issue before us is whether, under §§ 23(s) and 122 of the Internal Revenue Code of 1939, as amended, [26 U.S.C.A. §§ 23(s), 122], a corporation resulting from a merger of 17 separate incorporated businesses, which had filed separate income tax returns, may carry over and deduct the pre-merger net operating losses of three of its constituent corporations from the post-merger income attributable to the other businesses. We hold that such a carry-over and deduction is not permissible."

Such holding fits the attempt of Fawick here to "carry over and deduct the premerger net operating losses of" Federal Trucking Company (1950) "from the post-merger income (1953–1958) attributable to" the operations of the merger-acquired business of Airflex. We need not here review the rationale of Libson Shops other than to emphasize its insistence that the carryover privilege was limited to situations where the post-merger profits were attributable to an operation which could be said to be in "a

---

3. To the extent that the Federal Truck Division had postmerger profits (a small amount) the Commissioner allowed them to be set off against Federal's premerger 1950 loss.

4. Int.Rev.Code of 1954, § 172, 26 U.S.C.A. § 172 (Footnote by the Court.)

continuity of business enterprise" with the operation which experienced the pre-merger loss. Petitioner argues that because after the merger the holdings of the former Federal and Airflex shareholders were respectively in excess of 20% of the shares of the reorganized company, §§ 381 and 382 of the 1954 Internal Revenue Code would have permitted what was done here. The 1950 loss here involved, however, had to be used under the 1939 Code which as construed by Libson forbade the use of it attempted by petitioner.

Escape from the holding of Libson has been sought in numerous cases where variant factual situations were claimed to make it inapplicable. Its rule, however, has been applied in many divergent situations. E. g., Federal Cement Tile Co. v. Commissioner, 338 F.2d 691 (CA 7, 1964); Huyler's v. Commissioner, 327 F.2d 767 (CA 7, 1964); Norden-Ketay Corp. v. Commissioner, 319 F.2d 902 (CA 2, 1963), cert. denied, 375 U.S. 953, 84 S.Ct. 444, 11 L.Ed.2d 313 (1963); J. G. Dudley Co. v. Commissioner, 298 F.2d 750 (CA 4, 1962); Commissioner v. Virginia Metal Prods., Inc., 290 F.2d 675 (CA 3, 1961), cert. denied, 368 U.S. 889, 82 S.Ct. 140, 7 L.Ed.2d 88 (1961); Willingham v. United States, 289 F.2d 283 (CA 5, 1961), cert. denied, 368 U.S. 828, 82 S.Ct. 49, 7 L.Ed.2d 31 (1961); Mill Ridge Coal Co. v. Patterson, 264 F.2d 713 (CA 5, 1959), cert. denied, 361 U.S. 816, 80 S.Ct. 57, 4 L.Ed.2d 63 (1959). The opinion of Judge Friendly in Julius Garfinckel & Co. v. Commissioner, 335 F.2d 744 (CA 2, 1964) ably gathers and finds without validity the various arguments which have been advanced to ameliorate the Libson rule. We will not attempt to extend or improve on his learned discussion. His statement of the question there involved clearly exposes the application of his opinion here.

"The question, in substance, is this: When a corporation which has incurred losses but is still actively engaged in business acquires by consolidation another corporation with a history of profits in a similar business, does § 122 permit the consolidated corporation to deduct pre-consolidation losses from post-consolidation profits derived solely from operations of the acquired corporation—this in a context in which a single stockholder owned 58% of the common stock of the loss corporation and 100% of the common stock of the profit corporation during the period of the losses and, by virtue of the consolidation, owned 95% of the stock of the surviving corporation? With some hesitation, we have concluded that Libson requires a negative answer."

His implied invitation for Supreme Court change or clarification in the Libson rule, 335 F.2d 749, was answered by the Supreme Court's denial of certiorari. Julius Garfinckel & Co. v. Commissioner, 85 S.Ct. 651 (Jan. 18, 1965).

The decision of the Tax Court is affirmed.