James L. THOM and Jean
M. Thom, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Leroy W. Thom and Jean
E. Thom, Plaintiffs,

v.

United States of America, Defendant.

David W. Thom and Janis
M. Thom, Plaintiffs,

v.

United States of America, Defendant.

Tom Thom and Ladena
Thom, Plaintiffs,

v.

United States of America, Defendant.

Nos. 4:00CV3121, 4:00CV3122,
4:00CV3123, 4:00CV3124.

United States District Court,
D. Nebraska.

March 22, 2001.

Reginald S. Kuhn, Mattson, Ricketts Law Firm, Lincoln, NE, for plaintiffs.

Sally R. Johnson, Assistant United States Attorney, Lincoln, NE, Robert D. Metcalfe, U.S. Dept. of Justice, Tax Division, Washington, DC, for defendant.

## MEMORANDUM AND ORDER

KOPF, District Judge.

Most of the time, businesses that deal in personal property cannot take advantage of the installment sales provisions of the Internal Revenue Code (Code). For example, if a company makes and sells a widget in 2001 and then takes half the purchase price in that year with the balance in 2002 pursuant to an installment sale contract, the company must treat all the income as taxable in 2001 despite the fact that part of the sale price will not be paid until 2002. This is because in the modern financial markets the installment sale contract held by the seller (representing the buyer's promise to pay the balance) can be sold for cash. Hence, in most circumstances involving dealers, the installment sale contract is considered a cash equivalent received and reportable in the year of sale.

T–L Irrigation Company (T–L), which is owned by the plaintiffs, manufactures and sells center pivot irrigation systems. It does not claim to farm. But, because it sells irrigation systems to farmers, it tried to use the "farm property" exception to the general rule that dealers cannot take advantage of the installment sale provisions of the Code. The Internal Revenue Service (IRS) found that the exception did not apply to the plaintiffs' company, and increased the taxable income of the corporation for certain years. Because T–L Irrigation Company is a "Sub S" corporation for tax purposes (meaning that corporate income is taxed at the shareholder level), the plaintiffs paid the disputed amounts. After that, they sued for a refund.

On motions for summary judgment, I now rule in favor of the government and enter judgment dismissing these consolidated cases. My reasons for this decision follow.

## I. BACKGROUND

The undisputed material facts, established by the stipulation of the parties (filing 18, 4:00CV3121), are these:

1. The plaintiffs, James L. Thom and Jean M. Thom, LeRoy W. Thom and Jean E. Thom, David W. Thom and Janis M. Thom, and Tom Thom and Ladena Thom, are citizens of the United States of America and reside in Adams County, Nebraska, within this judicial district.

2. Jurisdiction over these consolidated income tax refund suits is conferred upon this court by 28 U.S.C. § 1346(a)(1).

3. Venue, for these consolidated income tax refund suits, is proper in this judicial district under 28 U.S.C. § 1402(a).

### The Taxpayers In These Consolidated Tax Refund Suits

4. Plaintiffs James L. Thom and Jean M. Thom were, at all times relevant to these consolidated actions, husband and wife, filing joint U.S. Individual Income Tax Returns (Forms 1040) for the taxable years which ended on December 31, 1994, and December 31, 1995, with the Internal Revenue Service in Ogden, Utah, and paying all taxes reported as due on their 1994 and 1995 federal income tax returns.

5. Plaintiffs LeRoy W. Thom and Jean E. Thom were, at all times relevant to these consolidated actions, husband and wife, filing joint U.S. Individual Income Tax Returns (Forms 1040) for the taxable years which ended on December 31, 1994, and December 31, 1995, with the Internal Revenue Service in Ogden, Utah, and paying all taxes reported as due on their 1994 and 1995 federal income tax returns.

6. Plaintiffs David W. Thom and Janis M. Thom, at all times relevant to these consolidated actions, husband and wife, filing joint U.S. Individual Income Tax Returns (Forms 1040) for the taxable years which ended on December 31, 1994, and December 31, 1995, with the Internal Revenue Service in Ogden, Utah, and paying all taxes reported as due on their 1994 and 1995 federal income tax returns.

7. Plaintiffs Tom Thom and Ladena Thom were, at all times relevant to these consolidated actions, husband and wife, filing joint U.S. Individual Income Tax Returns (Forms 1040) for the taxable years which ended on December 31, 1994, and December 31, 1995, with the Internal Revenue Service in Ogden, Utah, and paying all taxes reported as due on their 1994 and 1995 federal income tax returns.

### T–L Irrigation Company

8. Incorporated in Nebraska, T–L Irrigation Company is a Subchapter S Corporation which, at all times relevant to these consolidated actions, was engaged in the business of manufacturing, selling, and leasing farm equipment which included, but which was not limited to, center pivot irrigation systems.

9. As a dealer in farm equipment, T–L Irrigation Company sold and leased center pivot irrigation systems to farmers through a network of dealers in 1994 and 1995. During the same years, T–L Irrigation Company also made direct sales and leases of center pivot irrigation systems to farmers.

10. During 1994 and 1995, through T–L Credit Company, T–L Irrigation Nebraska Division, and T–L Irrigation Kansas Division (all divisions of T–L Irrigation Company), T–L Irrigation Company provided financing to farmers to facilitate their purchase of farm equipment directly from T–L Irrigation Company. Attached to the Joint Stipulation of Facts as Exhib-

its A and B are lists of the farmer customers who financed their purchase of center pivot irrigation systems through T–L Irrigation Company. Attached to the Joint Stipulation of Facts as Exhibits C through F, inclusive, are copies of portions of the Sales and Security Agreements by and between the seller, T–L Irrigation Company, and buyers of center pivot irrigation systems from T–L Irrigation Company which were entered into in 1994 and 1995. The Sales and Security Agreements provided that at least one payment was to be received after the close of the taxable year in which the sale occurred.

11. During its taxable years which ended on December 31, 1994, and December 31, 1995, T–L Irrigation Company accounted for its financed sales of center pivot irrigation systems made directly to farmers under the installment method, reporting taxable or ordinary income of $5,517,638 and $5,565,679 on its corporate income tax returns (Forms 1120S) for the 1994 and 1995 tax years, respectively.

12. Following an examination of the 1994 and 1995 corporate income tax returns of T–L Irrigation Company, the Commissioner of Internal Revenue disallowed its use of the installment method of reporting gain from the sales and leases of center pivot irrigation systems made directly to farmers, and adjusted its ordinary or taxable income for 1994 and 1995 by the amounts of $482,296 and $409,280, respectively, representing the accrued gain on the sales of farm equipment which T–L Irrigation Company had deferred for those taxable years.

#### The Adjustments to Plaintiffs' Joint Income Tax Returns

13. After the Commissioner of Internal Revenue disallowed T–L Irrigation Company's use of the installment method of reporting the gain from the sales and leases of center pivot irrigation systems, and increased the Company's ordinary income to include the gain deferred in 1994 and 1995, adjustments were made by the Commissioner to the plaintiffs' joint federal income tax returns for those years to reflect a corresponding increase in the ordinary income reported to the plaintiffs as their distributive share of the income of T–L Irrigation Company in 1994 and 1995.

14. With respect to the plaintiffs, James L. Thom and Jean M. Thom, who reported $822,680 and $844,918 as their shares of the distributable income of T–L Irrigation Company in 1994 and 1995, respectively, the Commissioner of Internal Revenue increased their taxable income by $71,910 in 1994 and $62,132 in 1995 to reflect the disallowance of the use of the installment method to report the sales and leases of center pivot irrigation systems to farmers by T–L Irrigation Company.

15. Attached to the Joint Stipulation of Facts as Exhibit G is a true and correct copy of the notice of deficiency issued to James L. Thom and Jean M. Thom on February 5, 1999.

16. With respect to the plaintiffs, Le-Roy W. Thom and Jean E. Thom, who reported $3,049,599 and $3,302,034 as their shares of the distributable income of T–L Irrigation Company in 1994 and 1995, respectively, the Commissioner of Internal Revenue increased their taxable income by $266,565 in 1994 and $222,883 in 1995 to reflect the disallowance of the use of the installment method to report the sales and leases of center pivot irrigation systems to farmers by T–L Irrigation Company.

17. Attached to the Joint Stipulation of Facts as Exhibit H is a true and correct copy of the notice of deficiency issued to LeRoy W. Thom and Jean E. Thom on February 5, 1999.

18. With respect to the plaintiffs, David W. Thom and Janis M. Thom, who reported $822,680 and $844,918 as their

shares of the distributable income of T–L Irrigation Company in 1994 and 1995, respectively, the Commissioner of Internal Revenue increased their taxable income by $71,910 in 1994 and $62,132 in 1995 to reflect the disallowance of the use of the installment method to report the sales and leases of center pivot irrigation systems to farmers by T–L Irrigation Company.

19. Attached to the Joint Stipulation of Facts as Exhibit I is a true and correct copy of the notice of deficiency issued to David W. Thom and Janis M. Thom on February 5, 1999.

20. With respect to the plaintiffs, Tom Thom and Ladena Thom, who reported $822,680 and $844,918 as their shares of the distributable income of T–L Irrigation Company in 1994 and 1995, respectively, the Commissioner of Internal Revenue increased their taxable income by $71,910 in 1994 and $62,132 in 1995 to reflect the disallowance of the use of the installment method to report the sales and leases of center pivot irrigation systems to farmers by T–L Irrigation Company.

21. Attached to the Joint Stipulation of Facts as Exhibit J is a true and correct copy of the notice of deficiency issued to Tom Thom and Ladena Thom on February 5, 1999.

### The Payment of the Additional Assessed Tax Liabilities

22. On or about June 4, 1997, the plaintiffs, James L. Thom and Jean M. Thom, made an advance payment of the 1994 federal income tax deficiency determined by the Internal Revenue Service in the amount of $29,330.00, along with statutory interest of $6,204.77, for a total of $35,534.77.

23. On or about June 4, 1997, the plaintiffs, James L. Thom and Jean M. Thom, made an advance payment of the 1995 federal income tax deficiency determined by the Internal Revenue Service in the amount of $25,342.00, along with statutory interest of $2,716.74, for a total of $28,058.74.

24. On or about June 4, 1997, the plaintiffs, LeRoy W. Thom and Jean E. Thom, made an advance payment of the 1994 federal income tax deficiency determined by the Internal Revenue Service in the amount of $50,091.00, along with statutory interest of $10,596.77, for a total of $60,687.77.

25. On or about June 4, 1997, the plaintiffs, LeRoy W. Thom and Jean E. Thom, made an advance payment of the 1995 federal income tax deficiency determined by the Internal Revenue Service in the amount of $149,545.00, along with statutory interest of $15,738.52, for a total of $165,283.52.

26. On or about June 4, 1997, the plaintiffs, David W. Thom and Janis M. Thom, made an advance payment of the 1994 federal income tax deficiency determined by the Internal Revenue Service in the amount of $29,330.00, along with statutory interest of $6,204.77, for a total of $35,534.77.

27. On or about June 4, 1997, the plaintiffs, David W. Thom and Janis M. Thom, made an advance payment of the 1995 federal income tax deficiency determined by the Internal Revenue Service in the amount of $25,342.00, along with statutory interest of $2,667.07, for a total of $28,009.07.

28. On or about June 4, 1997, the plaintiffs, Tom Thom and Ladena Thom, made an advance payment of the 1994 federal income tax deficiency determined by the Internal Revenue Service in the amount of $25,613.00, along with statutory interest of $5,416.39, for a total of $31,029.39.

29. On or about June 4, 1997, the plaintiffs, Tom Thom and Ladena Thom, made an advance payment of the 1995 federal income tax deficiency determined by the

Internal Revenue Service in the amount of $25,343.00, along with statutory interest of $3,440.39, for a total of $28,783.39.

30. On or about August 2, 1999, the plaintiffs, Tom Thom and Ladena Thom, made a payment of the 1995 federal income tax deficiency determined by the Internal Revenue Service in the amount of $3,584.00, along with statutory interest of $377.20, for a total of $3,961.20.

### The Filing of Amended Tax Returns

31. On August 17, 1999, the plaintiffs, James L. Thom and Jean M. Thom, timely filed their Amended U.S. Individual Income Tax Returns (Forms 1040X) with the Internal Revenue Service for the 1994 and 1995 taxable years as their administrative claim for refund.

32. On August 17, 1999, the plaintiffs, LeRoy W. Thom and Jean E. Thom, timely filed their Amended U.S. Individual Income Tax Returns (Forms 1040X) with the Internal Revenue Service for the 1994 and 1995 taxable years as their administrative claim for refund.

33. On August 17, 1999, the plaintiffs, David W. Thom and Janis M. Thom, timely filed their Amended U.S. Individual Income Tax Returns (Forms 1040X) with the Internal Revenue Service for the 1994 and 1995 taxable years as their administrative claim for refund.

34. On August 17, 1999, the plaintiffs, Tom Thom and Ladena Thom, timely filed their Amended U.S. Individual Income Tax Returns (Forms 1040X) with the Internal Revenue Service for the 1994 and 1995 taxable years as their administrative claim for refund.

### Notice of Disallowance of Plaintiffs' Claims for Refund

35. On January 26, 2000, the Commissioner of Internal Revenue notified the plaintiffs, LeRoy W. Thom and Jean E. Thom (Civil Action No. 4:00CV3122), David W. Thom and Janis M. Thom (Civil Action No. 4:00CV3123), and Tom Thom and Ladena Thom (Civil Action No. 4:00CV3124), by certified mail that their claims for refund, as described in paragraphs 32 through 34, above, had been denied. Plaintiffs James L. Thom and Jean M. Thom (Civil Action No. 4:00CV3121) did not receive a statutory notice of disallowance of their refund claims (as described in paragraph 31, above) from the IRS. Instead, plaintiffs James L. and Jean M. Thom properly and timely commenced their tax refund suit for the 1994 and 1995 tax years after the expiration of six (6) months from the filing of their claims for refunds.

### Commencement of Tax Refund Suits

36. On May 11, 2000, the plaintiffs, James L. Thom and Jean M. Thom (Civil Action No. 4:00CV3121), LeRoy W. Thom and Jean E. Thom (Civil Action No. 4:00CV3122), David W. Thom and Janis M. Thom (Civil Action No. 4:00CV3123), and Tom Thom and Ladena Thom (Civil Action No. 4:00CV3124), commenced timely suits for refund of the additional 1994 and 1995 federal income taxes and statutory interest described in paragraphs 22 through 30, above.

### No Assignment of Claims for Refund

37. The plaintiffs, James L. Thom and Jean M. Thom, LeRoy W. Thom and Jean E. Thom, David W. Thom and Janis M. Thom, and Tom Thom and Ladena Thom, are the rightful owners of the claims for refund described in paragraphs 31 through 34 above, and have made no assignment of their claims for refund of 1994 and 1995 federal income taxes and statutory interest.

## II. REVIEW

### A. The General Rule

■ The general tax rule is that all dealers in personal property are prohibit-

ed from using the installment sale provisions of the Code. "The term 'installment sale' does not include—(A) Dealer dispositions.—Any dealer disposition (as defined in subsection ($l$))." 26 U.S.C. § 453(b)(2)(A). "In general" the term " 'dealer disposition' means any of the following dispositions: (A) Personal property.—Any disposition of personal property by a person who regularly sells or otherwise disposes of personal property of the same type on the installment plan." 26 U.S.C. § 453($l$)(1)(A). As a result, Congress has clearly stated a governing statutory principle: Normally, a dealer of personal property will *not* benefit from installment sales treatment under the Code.

## B. The Exceptions

This rule has only two exceptions. *See* 26 U.S.C. § 453($l$)(2)(A) & (B) (pertaining to "Farm property" and "Timeshares and residential lots"). Plaintiffs rely upon the "Farm property" exception. *See* 26 U.S.C. § 453($l$)(2)(A). "The term 'dealer disposition' does not include—(A) Farm property"; that is, the term "dealer disposition" does not pertain to "[t]he disposition on the installment plan of any property used or produced in the trade or business of farming (within the meaning of section 2032A(e)(4) or (5))." [1] *Id.*

## C. The Plaintiffs' Argument

The plaintiffs argue that the words *"used or produced in the trade or business of farming"* mean that a merchant who sells personal property (like irrigation equipment) to a farmer is entitled to report the sale on the installment basis. This is true, argue the plaintiffs, even though the dealer is not engaged in farming prior to the sale and the property is not "used" in farming before the sale.

Condensed, their argument boils down to this: "The Thoms submit that the word 'used' in the context of I.R.C. § 453($l$)(2)(A) is an adjective describing the subject 'property' rather than the past tense of the verb 'use.' " (Br. Supp. Pls.' Cl. for Refund at 9.)

## D. The Court's Analysis

■ I reject the plaintiffs' argument. As the words, structure, and historical evolution of the statute make clear, the "farm property" exception is limited to *farmers'* (not merchants') dispositions of property used or produced in the business of farming. *Compare Coohey v. United States,* 1996 WL 773326, at *3 (N.D.Iowa.1996) (construing section 453 in relation to a hog farmer and holding that the farmer should report certain gains using the installment sale method; "Thus, the sale of farm property, including hogs, where at least one payment is received after the close of the taxable year in which the sale occurs is an installment sale."), *vacated and remanded on other grounds,* 1997 WL 1091010 (8th Cir., Aug.27, 1997), *on remand to Coohey v. United States,* 1998 WL 567751 (N.D.Iowa, June 8, 1998), *aff'd and remanded,* 172 F.3d 1060 (8th Cir.1999). The result I reach is consistent with a Private Letter Ruling. *See* Priv. Ltr. Rul. 9616012 (Apr. 19, 1996), *available in* 1996 WL 188046 (Section 453($l$)(2)(A) did not cover sales of poultry drinking water systems sold to farmers on installment contracts even though the farmers could not have purchased the systems without an installment plan).[2]

In essence, the plaintiffs would insert the words "to be" before the word "used." As redrafted by the plaintiffs, the statute would read "any property *to be* used or

---

1. 26 U.S.C. § 2032A(e)(4) & (5) defines "farm" and "farming purposes." The plaintiffs do not claim that T–L was engaged in farming.

2. Private letter rulings have no precedential value. 26 U.S.C. § 6110(k)(3).

produced in the trade or business of farming" is eligible for installment sale treatment.

■ The "cardinal rule" of statutory construction is that "a statute is to be read as a whole." *King v. St. Vincent's Hosp.,* 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991) (citing *Massachusetts v. Morash,* 490 U.S. 107, 115, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989)). "[T]he meaning of statutory language, plain or not, depends upon context." *Id.* Stated a different way: " 'Words are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning of each interpenetrate the other, but all in their aggregate take their purport from the setting in which they are used....' " *Id.* (quoting *N.L.R.B. v. Federbush Co.,* 121 F.2d 954, 957 (2nd Cir.1941) (L.Hand, J.)) Thus, we "should adopt that sense of words which best harmonizes with [the] context and promotes [the] policy and objectives of [the] legislature." *Id.* at 221 n. 10, 112 S.Ct. 570 (citing *United States v. Hartwell,* 73 U.S.(6 Wall.) 385, 396, 18 L.Ed. 830 (1868) & 2A C. Sands, *Sutherland on Statutory Construction* § 46.05 (rev. 4th ed.1984)).

■ To start with, Congress has generally prohibited dealers like T–L from using the installment sale reporting method. 26 U.S.C. § 453(b)(2)(A). When a taxpayer takes advantage of the installment sale method of reporting, the taxpayer essentially takes a tax deduction. In that situation, the taxpayer shifts income from one year to the next and thereby reduces the tax. It has long been the rule that " 'an income tax deduction is a matter of legislative grace and that the burden of clearly showing the right to the claimed deduction is on the taxpayer.' " *Libson Shops, Inc. v. Koehler,* 229 F.2d 220, 222 (8th Cir.1956) (loss carry forward deductions held by one corporation could not be used by successor corporation) (quoting *Interstate Transit*

*Lines v. Commissioner of Internal Revenue,* 319 U.S. 590, 593, 63 S.Ct. 1279, 87 L.Ed. 1607 (1943)), *aff'd,* 353 U.S. 382, 77 S.Ct. 990, 1 L.Ed.2d 924 (1957). Therefore, the plaintiffs have a heavy task in persuading me that the statute was written to benefit T–L.

Next, both the words and context of the "farm property" exception manifestly relate to farmers and not merchants, such as T–L. The ordinary sense of the words "used or produced" in section 453(*l*)(2)(A), when coupled in that same sentence with the phrase "in the trade or business of farming," establishes that the property must be "in" farming at the time of sale. In fact, the plaintiffs tacitly agree that the word "produced" can have no other meaning. This being true, the word "used" obviously has a similar meaning.

Still further, if Congress wanted to give farm equipment dealers the opportunity to use the installment sales method of reporting, it could have easily included those dealers with timeshare and residential lot dealers who were specifically and clearly given such a right in section 453(*l*)(2)(B). (However, pursuant to section 453(*l*)(3), timeshare and residential lot dealers must pay interest.) The fact that Congress could have easily added farm machinery dealers to section 453(*l*)(2)(B) strongly suggests that Congress did not intend section 453(*l*)(2)(A) to include those dealers. Put another way, I will not assume that Congress elected to do indirectly for farm equipment dealers what it did directly for timeshare and residential lot dealers.

In addition, if farm equipment dealers are included in section 453(*l*)(2)(A), they escape the obligation to pay interest that timeshare and residential lot dealers must pay under section 453(*l*)(2)(B). There is simply no reason to think that Congress thought more highly of farm equipment

dealers than timeshare and residential lot dealers.

Also, the position that section 453(*l*)(2)(A) includes sales of property "to be" used in farming would render the statute nearly impossible to enforce. Many products (like trucks) can be used in farming and in other businesses as well. On audit of the dealer, how would the IRS (or anyone else) determine what the purchaser actually did with the truck? And, even if the equipment had a single farming purpose (say a plow), section 453(*l*)(2)(A) refers to "*any*" property. Hence, there is no reason to think that Congress intended to include equipment that had a single farming purpose within the coverage of the exception.

Lastly, and as discussed by Professor Shores, "installment reporting has outlived its historical purposes of providing relief for merchants selling on the installment plan...." David P. Shores, *Closing the Open Transaction Loophole: Mandatory Installment Reporting,* 10 Va.Tax.Rev. 311, 320 (1990) (discussing the historical roots of section 453, the Installment Sales Revision Act of 1980, and the amendments which followed ). As a result, "[i]n each of the years 1984, 1986, 1987 and 1988, Congress has taken steps to restrict the availability of installment reporting and to curb specific abusive practices." *Id.* at 316. "Since dealers can usually sell their receivables for cash, the Omnibus Budget Reconciliation Act of 1987 ('1987 Act') repealed the installment method for dealer sales of personal and real property." *Id.* at 318. Given the narrowing evolution of section 453 and the absence of Congressional findings that dealers in equipment like John Deere or T–L lack the ability to sell their receivables for cash, there is no reason to believe that the "farm property" exception was designed for them.

But the plaintiffs have a rejoinder to this last point. They argue that Congress used the exception not to benefit them but to help farmers. By allowing T–L to report its gains on the installment sales basis, the plaintiffs argue that Congress intended to make credit more easily available to farmers. If given the opportunity to report gains by using this method, the plaintiffs argue that T–L and others like it would pass along to farmers the dealer's tax benefits in the form of better credit terms. While inventive, I am not persuaded by this reasoning.

There is no evidence that Congress believed that allowing equipment dealers to use the installment sale method of reporting income would make credit more available to farmers. Therefore, I am left with an explicit statutory provision which shows that Congress intended to restrict rather than expand use of the installment sale reporting method by dealers. As a result, I will not read into the statute an unstated purpose which contradicts a clear rule.

## III. CONCLUSION

In most cases, Congress has decided that merchants should not be allowed to use the installment sale method of reporting income. As a merchant, and not a farmer, T–L is not covered by the "farm property" exception. Not surprisingly, the "farm property" exception applies to farmers.

IT IS ORDERED that the government's motions for summary judgment (filing 19, 4:00CV3121; filing 21, 4:00CV3122; filing 21, 4:00CV3123; filing 21, 4:00CV 3124) are granted. Judgment will be entered by separate document.

## JUDGMENT

Pursuant to the memorandum and order entered this date,

IT IS ORDERED that:

1. Judgment is entered for the United States and against the plaintiffs providing that these cases are dismissed with prejudice and the plaintiffs shall take nothing.

2. Costs are taxed to the plaintiffs.