# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2014

_____

James L. Thom; Jean M. Thom,           *
                                       *
             Appellants,               *
                                       *   Appeal from the United States
       v.                              *   District Court for the
                                       *   District of Nebraska.
United States of America,              *
                                       *
             Appellee.                 *
                                       *
---------------------------------------  *
                                       *
LeRoy W. Thom; Jean E. Thom,           *
                                       *
             Appellants,               *
                                       *
       v.                              *
                                       *
United States of America,              *
                                       *
             Appellee.                 *
                                       *
---------------------------------------  *
                                       *
David W. Thom; Janis Thom,             *
                                       *
             Appellants,               *
                                       *
       v.                              *
                                       *

United States of America,     *
                                            *

         Appellee.            *
                                            *

--------------------------------------     *
                                            *

Tom Thom; Ladena Thom,       *
                                            *

         Appellants,         *
                                            *

          v.                   *
                                            *

United States of America,     *
                                            *

         Appellee.            *

_____

Submitted:  December 13, 2001
Filed:  March 19, 2002

_____

Before WOLLMAN,[1] Chief Judge, JOHN R. GIBSON, and MAGILL, Circuit Judges.

_____

MAGILL, Circuit Judge.

James L. and Jean M. Thom, LeRoy W. and Jean E. Thom, David W. and Janis Thom, and Tom and Ladena Thom (the "taxpayers"), all husband and wife pairs filing

---

[1]The Honorable Roger L. Wollman stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on January 31, 2002.  He has been succeeded by the Honorable David R. Hansen.

their tax returns jointly, appeal the district court's[2] adverse grant of summary judgment. The Internal Revenue Service (the "IRS") increased taxpayers' income for 1994 and 1995 after determining that taxpayers' Subchapter S corporation,[3] T-L Irrigation Co., improperly utilized the installment method of accounting to report the proceeds of that corporation's sales of farm equipment for those years. After paying the resulting increase in taxes, taxpayers filed claims for a refund, and then brought suit for refunds in the district court. These four claims were consolidated by order dated November 7, 2000. The government filed a motion for summary judgment, which was granted on March 22, 2001. See Thom v. United States, 134 F. Supp. 2d 1093 (D. Neb. 2001).

This tax refund case involves the interpretation of section 453(l)(2)(A) of the Internal Revenue Code (the "I.R.C." or the "Code"). This is a case of first impression in both this and other federal courts of appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291. For the reasons stated below, we affirm the judgment of the district court.

---

[2]The Honorable Richard G. Kopf, Chief Judge, United States District Court for the District of Nebraska.

[3]The Supreme Court explained:

Subchapter S of the Internal Revenue Code, 26 U.S.C. §§ 1361-1379, was enacted in 1958 to eliminate tax disadvantages that might dissuade small businesses from adopting the corporate form and to lessen the tax burden on such businesses. The statute accomplishes these goals by means of a pass-through system under which corporate income, losses, deductions, and credits are attributed to individual shareholders in a manner akin to the tax treatment of partnerships.

Bufferd v. Comm'r of Internal Revenue, 506 U.S. 523, 524-25 (1993) (citing 26 U.S.C. §§ 1366-68).

# I.

T-L, a Nebraska corporation, is a Subchapter S corporation that manufactures, sells, and leases farm equipment, including center pivot irrigation systems. In 1994 and 1995, the years at issue in this case, T-L sold these irrigation systems either through a network of dealers or directly to farmers. If necessary, financing for these direct sales to farmers was provided through several internal divisions of T-L. The terms of the Sales and Security Agreements that governed these sales called for at least one payment to be made after the close of the taxable year in which the sale occurred. Under this scenario, T-L reported these direct sales to the IRS using the installment method of accounting. On the returns (Form 1120S) filed in 1994 and 1995, T-L reported ordinary taxable income of $5,517,638 and $5,565,679, respectively.

Following an audit of the 1120S's for the tax years in question, the IRS disallowed the use of the installment method of accounting for reporting the gain from the direct sales of the center pivot irrigation systems. As a result, T-L's ordinary taxable income increased by $482,296 and $409,208, respectively. Because this increase flowed through to taxpayers, the IRS determined that taxpayers were liable for additional taxes for the tax years in question.

After having paid the requisite amounts, taxpayers timely filed requests for a refund claiming that T-L's sales of the center pivot irrigation systems to various farmers qualified for the installment method of reporting. As authority for this assertion, taxpayers relied on I.R.C. § 453(1)(2)(A), which permits the use of the installment method of accounting in certain circumstances. Generally speaking, any sale classified as a "dealer disposition" cannot be reported using the installment method. However, section 453(l)(2)(A) exempts from the definition of "dealer dispositions" "any property used or produced in the trade or business of farming (within the meaning of section 2032A(e)(4) or (5))." The IRS rejected taxpayers'

claim. Consequently, taxpayers brought suit in the district court seeking a refund of taxes and statutory interest. The government filed a motion for summary judgment, which taxpayers opposed.

In its opinion, the district court rebuked taxpayers' claim that T-L's sales of center pivot irrigation systems qualified for the use of the installment method of accounting under section 453(l)(2)(A) for dispositions "of any property used or produced in the trade or business of farming." In rejecting this claim, the district court held that section 453(l)(2)(A) "is limited to <u>farmers'</u> (not merchants') dispositions of property used or produced in the business of farming." <u>Thom</u>, 134 F. Supp. 2d at 1099. Accordingly, the district court granted the government's motion for summary judgment. On April 23, 2001, taxpayers filed a timely notice of appeal. This appeal follows.

## II.

We review the district court's grant of summary judgment de novo, using the same standards applied in that court. <u>Breeding v. Arthur J. Gallagher & Co.</u>, 164 F.3d 1151, 1156 (1999).

As a general rule, businesses that deal in personal property are not permitted to utilize the installment method of accounting. Section 453 of the Code, however, allows certain taxpayers to report their earnings under the installment method. It permits the proceeds of a so-called installment sale contract to be spread out over the period of time corresponding to the duration of the payments, rather than being reported as a lump sum in the year of the sale. Section 453 defines the "installment method" as an accounting

> under which the income recognized for any taxable year from a
> disposition is that proportion of the payments received in that year

which the gross profit (realized or to be realized when payment is completed) bears to the total contract price.

I.R.C. § 453(c). Such a method of accounting is usually available for reporting the proceeds of a sale "where at least 1 payment is to be received after the close of the taxable year in which the disposition occurs." I.R.C. § 453(b)(1). Under the installment method, sale proceeds guaranteed today, while not paid today, do not become taxable until they are actually obtained. The purpose of allowing this method of accounting is "to relieve taxpayers who adopted it from having to pay an income tax in the year of sale based on the full amount of anticipated profits when in fact they had received in cash only a small portion of the sales price." Comm'r of Internal Revenue v. S. Tex. Lumber Co., 333 U.S. 496, 503 (1948).

This method cannot be used, however, to report proceeds from a sale of personal property by a person "who regularly sells or otherwise disposes of personal property of the same type on the installment plan," or so-called "dealer dispositions." I.R.C. §§ 453(b)(2)(A), 453(l)(1)(A).[4] After reviewing these provisions, we are left with the impression that Congress has clearly stated a preference against permitting businesses from utilizing the installment method of accounting. There are, however, two exceptions to this general rule. See I.R.C. § 453(l)(2)(A) & (B).

Taxpayers' argument relies on the first such exception. Their primary argument is that T-L's sales of center pivot irrigation systems to farmers are not "dealer dispositions" because, under section 453(l)(2)(A), the term "dealer disposition" does not include a disposition of "any property used or produced in the trade or business

_____

[4]This is so because oftentimes these contracts are sold for cash in the year in which they are made and are therefore considered a cash equivalent to be reported in the year of sale.

-6-

of farming (within the meaning of section 2032(e)(4) or (5))."[5]  Not surprisingly, the IRS disagrees.  The primary disagreement before us is the proper definition of the word "used" in section 453(l)(2)(A).  Taxpayers argue that the term "used" should be read expansively to mean any and all property which has been, or will be, used for farming.  The IRS, however, reads the word "used" in a much more restrictive fashion.  It argues that section 453(l)(2)(A) only applies to dispositions of property that are actually used in farming by farmers.  Under the IRS's view, the benefits from this exception flow solely to farmers and not to dealers who sell goods to farmers.  This is a question of first impression in this or any other circuit.[6]

In determining whether a statutory exception applies, we look first to the statute's plain language.  If the statutory language is unambiguous, and there is no clear congressional intent to the contrary, we must regard that statutory language as conclusive.  <u>Reves v. Ernst & Young</u>, 507 U.S. 170, 177 (1993) (citations omitted).  In our view, the plain language of the statute supports both the IRS's and the district court's interpretation of section 453(l)(2)(A).  Under its plain terms, the statute grants an exception for the disposition of property that is either "used or produced" in farming.  There is no contention that the irrigation systems are "produced" in farming, so this case turns on the meaning of the word "used."

Here, the juxtaposition of the word "used" with the word "produced" is instructive.  Surely, the word "produced" is in the past tense and most likely applies

_____

[5]26 U.S.C. § 2032A(e)(4) & (5) defines both "farm" and "farming purposes."  Taxpayers, however, concede that at no point during the years at issue was T-L engaged in farming as contemplated by the Code.

[6]The IRS, however, has issued a Private Letter Ruling that is consistent with the result we reach today.  <u>See</u> Priv. Ltr. Rul. 96-16-012 (Jan. 5, 1996).  Although private letter rulings have no precedential value and do not in any way bind this court, 26 U.S.C. § 6110(k)(3), we believe they are an instructive tool that we have at our disposal.

to such things as crops and livestock. If this is true, we do not understand why the word "used" should be read any differently. Cf. Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 479 (1992) (noting that similar words within the same statute should have similar meanings). That is, the word "used" should also be read in the past tense. If read in the past tense, then the government is correct when it asserts that this section does not apply to T-L's sales of the center pivot irrigation systems because taxpayers do not contend that any of their equipment has actually been used in farming. Rather, they only assert that such equipment will be used in farming, at some unspecified time in the future. For taxpayers' reading of this section to be correct, one must insert the phrase "to be" in front of the word "used." Obviously, because Congress chose not to do so, we are not at liberty to do so. Not only does the statute's plain language unambiguously support our position, but so do administrative concerns.

If section 453(l)(2)(A) was applicable to a dealer's sale of property to be used in a purchaser's farm business, it would then become necessary for a dealer to first determine whether its customer was engaged in the trade or business of farming and then determine whether the property sold would actually be used in the trade or business of farming. On audit, a dealer would have to satisfy the IRS that the purchaser actually used the property in the trade or business of farming. While we understand that the center pivot irrigation systems in question serve a singular purpose, irrigating crops, and will most likely never be used for anything but farming, the plain language of section 453(l)(2)(A) does not permit us to draw such a distinction. That section explicitly refers to "any property used or produced in the trade or business of farming." I.R.C. § 453(l)(2)(A) (emphasis added). Thus, we conclude that Congress did not intend to bifurcate single purpose and general purpose property within the coverage of the exception, and that the phrase "any property" means what it says.

As a practical matter, taxpayers' interpretation has the potential to create a great

deal of administrative uncertainty. Allowing non-farming dealers to account via the installment method for multipurpose property would create administrative problems because it would require the IRS to determine whether an item was actually used in farming after its sale. Although the center pivot irrigation systems sold by T-L have little or no use other than in farming activity,[7] the line between other types of property is not so clear. There are many products that farmers purchase that serve a dual purpose. For example, farmers may purchase trucks and gasoline to run those trucks. These trucks, however, serve the dual purpose of both aiding in farm work and transporting the farmer for personal use. The result would be that the IRS would have to draw fine distinctions to determine what property would be taxable and what percentage of such property would be taxable, dependant upon the extent to which that property was used in farming. Drawing such fine distinctions would create an administrative nightmare and should be avoided considering the plain language of section 453(l)(2)(A).[8]

As intimated above, the general rule is that section 453 prohibits the use of the installment method by dealers in personal property. However, section 453(l)(2)(B) does provide some exceptions; specifically, dealers involved in the sale of timeshares and residential lots. Based on this, we conclude that if Congress intended to allow

---

[7]Of course, certain types of irrigation systems are oftentimes used on golf courses or to water large estates. But there is no evidence before us that shows that the irrigation systems at issue in this case were used for anything but farming.

[8]This interpretation is consistent with the IRS's position that the goal of this exception was to relieve the economic distress of farmers, as distinct from other taxpayers. See Priv. Ltr. Rul. 99-08-040 (Nov. 6, 1998). With respect to taxpayers' argument that allowing taxpayers to use the installment method would provide an indirect benefit to farmers and thus the exception applies, we believe that argument is without merit. The implicit suggestion in that argument is that dealers in farm equipment who benefit from the installment method of accounting would pass the economic benefits conferred upon them to farmers, and without such benefits farmers would suffer. However, there is no evidence in the record to support this suggestion.

dealers in farm equipment to use the installment method of accounting, it would have expressly included such individuals under section 453(l)(2)(B), rather than by implication under section 453(l)(2)(A), as taxpayers suggest. It chose not to do so. This court should hesitate before it reads into the Code what is not expressly contained therein. Also, section 453(l)(2)(B) imposes a burden on dealers in timeshares and residential lots to pay interest on the taxes deferred by use of the installment method. Under taxpayers' reading of section 453(l)(2)(A), no such burden would be imposed on individuals who sell property to farmers who then use that property in the trade or business of farming. Taxpayers' interpretation would create a statutory anomaly: Those whom Congress expressly chose to grant an exception would be required to pay interest on taxes deferred by use of the installment method, while those whom Congress did not expressly grant any such exception would not be required to pay any such interest. There does not appear to be any reason why Congress, had it intended to allow dealers in farm equipment to be covered, would not impose a similar burden on dealers in farm equipment; nor will we interpret the Code in such a way as to countenance such an odd result.

As a final note, taxpayers' expansive reading of section 453(l)(2)(A) is seemingly at odds with the history of the provisions regarding the use of the installment method of accounting.[9] In 1980, Congress passed the Installment Sales Revision Act of 1980, which allowed more individuals to utilize the installment method when reporting their income. See Installment Sales Revision Act of 1980, Pub. L. 96-471, 94 Stat. 2247. However, in 1984, 1986, 1987, and 1988, when revising the Code, Congress expressly "restrict[ed] the availability of installment reporting [ ] to curb specific abusive practices." David F. Shores, Closing the Open Transaction Loophole: Mandatory Installment Reporting, 10 Va. Tax. Rev. 311, 316

_____

[9]For a thorough history of the historical roots of section 453, the Installment Sales Revision Act of 1980, and the subsequent amendments, see David F. Shores, Closing the Open Transaction Loophole: Mandatory Installment Reporting, 10 Va. Tax. Rev. 311 (1990).

(1990). In particular, "the Omnibus Budget Reconciliation Act of 1987 ('1987 Act') repealed the installment method for dealer sales of personal and real property," save certain exceptions. Id. at 318. Those exceptions, as noted above, are limited to farmers, and timeshare and residential lot dealers. In light of this "narrowing evolution," it appears as though Congress has made a conscious effort to affirmatively restrict the use of the installment method of accounting to a very limited number of individuals. We will not, as taxpayers suggest we should, expand the number of individuals who may benefit from the use of the installment method when Congress has clearly intended otherwise. Instead, we construe section 453(l)(2)(A) narrowly and hold that it only applies to property that was actually used in the trade or business of farming by farmers. Therefore, all of the taxable gain on the sales of the center pivot irrigation systems should have been reported in the year of the installment sale, not in each year of the installment payment.

### III.

Because taxpayers, admittedly so, are not farmers, they are not permitted to take advantage of the exceptions contained within section 453(l)(2)(A). Accordingly, we affirm the district court's grant of summary judgment.

JOHN R. GIBSON, Circuit Judge, dissenting.

I respectfully dissent.

I fear, most respectfully, that the court's holding is based in large part on a faulty grammatical analysis. As the court says, "[T]his case turns on the meaning of the word 'used,'" supra at 7, in the statutory sentence which, simplified for ease of analysis, states: "'Dealer disposition' does not include disposition of property used in farming." The court reasons that the word "used" in section 453(1)(2)(A) of the Internal Revenue Code is expressed in the past tense, and therefore must refer to some

action accomplished in the past. Id. Therefore, the court reasons, the section must apply only to equipment that has already been used in agriculture, not new equipment that has not yet been used. Id. The court says that in order to reach any other conclusion, it would have to insert the words "to be" in front of "used," and the court is not at liberty to do so. Id. at 8.

Actually, "used" does not function as the main verb of the sentence, but is a past participle which is part of a subordinate clause modifying the word "property." That subordinate clause has an implicit passive construction, in which some words have to be supplied to complete the meaning. Part of what is missing from the clause is "that," the relative pronoun introducing the subordinate clause. See Diana Hacker, The Bedford Handbook § 59b (5th ed. 1998) (adjective clauses usually introduced by relative pronoun, which may be implicit). The rest of what is missing is some form of the verb "to be." See The American Heritage Book of English Usage § 47 (1996) (past participle used with "to be" to form passive voice). The full clause might be "that is used in farming," in which case the actual tense of the verb would be present. It might be "that will be used in farming," so that the tense of the verb would be future. It might be "that was used in farming," which is the version the court has chosen, and this is indeed the past tense. In all three cases, we supply words not included by Congress, whether or not we acknowledge it.

I believe it to be more consistent with ordinary usage to understand the full clause in the present tense, and thus to consider the phrase "property used in farming" to identify a type of property, rather than to refer to the actual history of a particular piece of equipment. Tractors, for instance, are generally used in farming, and so would be covered by the exemption in section 453(1)(2)(A). So should the irrigators at issue here.

Following the logic of the court's interpretation, a John Deere combine, even one owned by a farmer, would not be covered by the statutory exemption until it had

been used at least once to harvest crops. At the same time, a Jaguar convertible used once to haul hay would become property covered by the exemption. Clearly, the court does not envision such a result. The distinction that the court ultimately espouses, between property in the hands of a dealer and property in the hands of a farmer, does not follow from Congress's choice of the word "used," and it does not otherwise appear in the statute. The Internal Revenue Service and the court today have invented it.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.